Dr. Ing. Max SCHLOETTER et al.,
Plaintiffs-Appellees,

v.

RAILOC OF INDIANA, INC.,
Defendant-Appellant.

No. 76–1437.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1976.

Decided Dec. 1, 1976.

Armand P. Boisselle, Cleveland, Ohio, James H. Pankow, South Bend, Ind., for defendant-appellant:

Charles E. McKenney, New York City, Arthur A. May, South Bend, Ind., for plaintiffs-appellees.

Before CLARK, Associate Justice,* and SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

The issue on this appeal is whether the district court exceeded the limits of its permissible discretion in granting plaintiffs' motion to compel withdrawal of defendant's counsel from the pending patent infringement action.

I

The action pending in the court below is for infringement of U.S. Reissue Patent 27,999, which was issued to plaintiff Schloetter based on original United States

* Honorable Tom C. Clark, Associate Justice, (Retired), United States Supreme Court, is sitting by designation.

Patent No. 3,694,330.[1] In their complaint, plaintiffs alleged that defendant Railoc infringed all twenty claims in the reissue patent, which includes the sixteen claims in the original Schloetter patent. In its motion for partial summary judgment, defendant contended that the four additional claims in the reissue patent should be held invalid because they claim an invention not disclosed by the original patent. Thus, the scope of the original Schloetter patent is directly in issue in the infringement action.

Attorneys Boisselle and Lyon of the Cleveland, Ohio based law firm of Donnelly, Maky, Renner & Otto [Donnelly firm] were retained to represent the defendant in this case. According to Mr. Boisselle's affidavit testimony, while reviewing the file history of the original Schloetter patent, he discovered that a Mr. Jeffery, while a partner in the Donnelly firm,[2] performed services for Schloetter in connection with the prosecution of the original patent application before the Patent Office.

From January 1, 1967 to January 1, 1974, Mr. Jeffery was a partner in the Donnelly firm.[3] Although Donnelly's principal offices were located in Cleveland, Mr. Jeffery worked from June of 1967 in the Washington, D. C. office maintained by the Donnelly firm. He represented not only existing Donnelly clients but also other clients who engaged him to represent them before the Patent Office in Washington.

In 1969 Schloetter's patent agent retained Mr. Jeffery to aid in prosecuting the original Schloetter patent application.[4] The court below found that Mr. Jeffery's participation in the application process was substantial:

> Because an interference was declared during the prosecution of the Schloetter application, Mr. Jeffery did more than the routine filing of papers and payment of fees he might normally have performed. He was named Associate Counsel during that interference, in which other inventors sought to show invention over Schloetter. It also appears that at some time during the prosecution of the application, . . . [Schloetter's patent agent] took a vacation, leaving Mr. Jeffery in complete charge of the processing of the application.

Mem. Op., Sept. 12, 1975, at 3. And Mr. Jeffery's representation in connection with the original Schloetter ·patent continued from about December of 1969 to June of 1973.

When Mr. Boisselle informed counsel for plaintiffs in this action of Mr. Jeffery's former representation of Schloetter in relation to the original patent, plaintiffs' counsel requested that the Donnelly attorneys withdraw from the case because of the potential conflict of interest. Thereupon, defendant filed a petition for a decree of competency of counsel to represent defendant, and plaintiffs followed with a motion to compel the withdrawal of the Donnelly attorneys from the case.

1. "Two of Schloetter's employees . . . are the inventors of the subject of the patent." Mem. Op., Sept. 12, 1975, at 2 n.2.

2. Two matters require attention at this point. First, although the title and membership of the firm representing Railoc in this action have not remained constant during the entire period under consideration, any changes which have occurred cannot be said to have significantly disrupted the continuity of the Cleveland based firm. As the court below noted, "Defendant has not suggested that the firm's reorganization is in any way material to the issues presently before the Court." Mem. Op., Sept. 12, 1975, at 2 n.3.

The second matter involves a dispute between the parties as to whether or not Mr. Jeffery should be considered a *present* partner in the Cleveland firm. The district court found it unnecessary to decide the question because it concluded that there existed a disqualifying conflict of interest even if Mr. Jeffery is considered a *former* partner in that firm. We also find it unnecessary to decide Mr. Jeffery's *actual* present status in the Cleveland firm because of our disposition of this appeal.

3. See note 2, *supra*.

4. The District Court found specifically that there existed an attorney-client relationship "between Mr. Jeffery and the Schloetter employees/inventors." Mem. Op., Sept. 12, 1975, at 4. The defendant has not challenged the conclusion on appeal.

After hearing oral argument on the motions, the district court entered an order on September 12, 1975, denying defendant's petition for a decree of competency and granting plaintiffs' motion to compel defendant's attorneys to withdraw (Def. Appendix C). On September 22, 1975, defendant moved under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the September 12 order. On March 29, 1976, the district court entered an order denying defendant's motion. It is from these orders that defendant appeals.

## II

Before proceeding to the merits of this appeal, it is necessary to answer plaintiffs' threshold contention that this court is without jurisdiction at this time to review the disqualification order.

Section 1291 of Title 28 of the United States Code provides in pertinent part:

> The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States
>
> . . . .

In *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court adopted a practical approach to the appealability of "final decisions":

> . . . [there exists a] small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that

appellate consideration be deferred until the whole case is adjudicated.

*Id.* at 546, 69 S.Ct. at 1225.

■ It is generally agreed [5] that an order granting or denying a motion to disqualify counsel satisfies the *Cohen* standard and is appealable. "[T]he order is collateral to the main proceeding yet has grave consequences to the losing party. . . ." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 496 F.2d 800, 805 (2d Cir. 1974). And "[a]n order erroneously depriving a party of his chosen counsel during the course of the trial would . . . frustrate public policy in a way which a post-trial appeal could not mitigate." *Draganescu v. First National Bank of Hollywood*, 502 F.2d 550, 551 n.1 (5th Cir. 1974).

Accordingly, this court has jurisdiction to review the order disqualifying defendant's counsel.

## III

■ The basic policies underlying any judicially-compelled withdrawal of counsel because of a potential conflict of interest can be found in Canons 4 and 9 of the ABA Code of Professional Responsibility.[6] Canon 4 provides that "a Lawyer Should Preserve the Confidences and Secrets of a Client," and Canon 9 provides that "a Lawyer Should Avoid Even the Appearance of Professional Impropriety." Read together, the two canons indicate that an attorney *may* be required to withdraw from a case where there exists even an appearance of a conflict of interest.

---

5. *See, e. g., International Electronics Corp. v. Flanzer*, 527 F.2d 1288 (2d Cir. 1975); *Fullmer v. Harper*, 517 F.2d 20 (10th Cir. 1975); *Kroungold v. Triester*, 521 F.2d 763 (3d Cir. 1975); *Draganescu v. First National Bank of Hollywood*, 502 F.2d 550 (5th Cir. 1974). *Cf. Cord v. Smith*, 338 F.2d 516 (9th Cir. 1964), where the court, although finding an order denying disqualification not appealable, reached the merits of the order under 28 U.S.C. § 1651.

Also, plaintiffs' attempt to distinguish the appealability of orders denying disqualification from those granting disqualification must be rejected. *See, e. g., Silver Chrysler Plymouth,*

*Inc. v. Chrysler Motors Corp.*, 496 F.2d 800, 805 (2d Cir. 1974).

6. *See Cannon v. U. S. Acoustics Corp.*, 398 F.Supp. 209, 214–15 (N.D.Ill.1975), *aff'd in part, rev'd in part*, 532 F.2d 1118 (7th Cir. 1976) (footnotes and citations omitted):

> The conduct of attorneys practicing before the court is governed by the American Bar Association's CPR. General Rules of the District Court for the Northern District of Illinois, Rule 8(a) & (d). Jurisdiction to enforce the CPR exists by reason of the court's regulatory power over the members of its Bar.

■ It is important to note at the outset that the district court, which has the primary responsibility for supervising the conduct of attorneys appearing before it, possesses broad discretion in determining whether disqualification is required in a particular case, and the scope of our review is limited accordingly. As the Third Circuit stated in *Richardson v. Hamilton International Corp.*, 469 F.2d 1382 (3d Cir. 1972):

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts . . . *have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.*
>
> . . . [T]he regulation of attorneys appearing before the district court in these matters will be disturbed only when, on review of the record, we can say that the district court abused its permissible discretion.

*Id.* at 1385–86 (emphasis supplied, footnotes omitted). With these principles in mind, we proceed to determine whether the disqualification order in this case constituted an abuse of discretion.

■ We begin with the well-settled rule that where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are "substantially related." The court, in these circumstances, makes no inquiry into whether confidential information relating to the matter involved in the subsequent representation did in fact pass to the attorney during the course of the former representation; his possession of such information will be presumed. *T. C. Theatre Corp. v. Warner Bros. Pictures,* *Inc.,* 113 F.Supp. 265, 268–69 (S.D.N.Y. 1953).

Hence, if Mr. Jeffery were attempting to represent Railoc in this action, his disqualification would clearly be required. For, the subject matter of his former representation of Schloetter is without question substantially related to the subject matter of the pending action. As the district court stated:

> The plaintiffs' complaint charges defendant with infringement of all the reissue patent's claims, including the sixteen claims which were unchanged from the original patent obtained by Mr. Jeffery, and for the validity of which Mr. Jeffery argued. Further, through its motion for partial summary judgment, defendant challenged the validity of the additional four claims in the reissue patent on the theory that they were not disclosed by the original patent; this issue remains in the suit. Thus the scope of the very patent Mr. Jeffery helped to obtain is very much in issue in this cause.

Mem. Op., Sept. 12, 1975, at 4–5.

■ We think it equally clear that if Mr. Jeffery were still a member of the Donnelly firm,[7] the confidential information presumptively possessed by him would be imputed to the other members of the Donnelly firm, including attorneys Boisselle and Lyon. This would result in their disqualification, irrespective of whether or not they had actually been exposed to such confidences. *Laskey Bros. v. Warner Bros. Pictures, Inc.,* 224 F.2d 824, 826 (2d Cir. 1955), *cert. denied,* 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956). To adopt another rule under these circumstances would be to completely ignore the dictates of Canon 9.

Defendant contends, however, that where the attorney whose former representation gives rise to an apparent conflict of interests is no longer a member of the firm, the inference that other members of the firm have been exposed to confidential information related to the subject matter of the subsequent representation is rebuttable;

7. *See* note 2, *supra.*

and defendant further contends that the inference has been rebutted by the affidavit testimony of Messrs. Boisselle and Jeffery (Def. Br. Appendix E and F).

■ Even if we were to agree that the inference of impropriety which arises in this case should be rebuttable by evidence sufficient to establish that other members of the firm were not privy to confidential information, the court below indicated that, in any event, it considered the defendant's rebuttal evidence insufficient:

> [T]here has been no showing by the defendant herein to the court's satisfaction that would rebut the inference that confidential information was passed to the present members of the Donnelly firm as a result of the continuity of membership which that firm has maintained over the years.

Mem. Op., Mar. 29, 1976, at 4. In view of the broad discretion vested in the district court in this area, if we were compelled to limit our inquiry to whether the rebuttal evidence was sufficient, we would be reluctant to disturb the district court's conclusion on the record before us.[8]

■ However, even if defendant's present attorneys have not actually been exposed to confidential information disclosed during the course of Mr. Jeffery's former representation of Schloetter, the district court, under the circumstances of this case, was well within the bounds of its discretion in disqualifying attorneys Boisselle and Lyon because of the appearance of impropriety which would result from their continued involvement in the pending infringement action.

As noted above, when Mr. Jeffery was a member of the Donnelly firm, the confidential information he was deemed to possess was imputed to the other members of his firm. Where, as here, the continuity of the firm held to possess the collective knowledge of its clients' confidences has been maintained throughout the relevant period, there remains, despite Mr. Jeffery's departure, a "danger . . . that . . . [confidential] information is available for exposure to the attorneys in the existing Donnelly firm who now seek to represent defendant in this action." Mem. Op., Mar. 29, 1976, at 5.

And, perhaps more important from the perspective of preserving public confidence in the legal profession, it would be unreasonable to expect the public or clients like Schloetter, who have reposed confidences in a member of a law firm, to accept the proposition that the danger of those confidences being used against the client in a closely related matter has entirely dissipated upon the departure of the individual member from the firm.

> The rationale underlying Canon 4 is the principle that a client should be encouraged to reveal to his attorney all possibly pertinent information. . . . *A client should not fear that confidences conveyed to his attorney in one action will return to haunt him in a later one.*

*Richardson, supra,* at 1384 (emphasis supplied).

In addition, although defendant's affidavit testimony states that Mr. Jeffery ceased to be a partner in the Donnelly firm on January 1, 1974,[9] certain facts suggest that he continued to be "associated" with the firm and some of its members after that date. For example, in defendant's petition for decree of competency of counsel, the following appears:

> In 1971 Donald D. Jeffery, Esq., was a partner in Oberlin, Maky, Donnelly & Renner, but due to a partnership reorganization on January 1, 1974, he is not now a partner in the *parent* firm [Donnelly, Maky, Renner & Otto], but a partner in

---

**8.** Although there was no evidence that attorneys Boisselle and Lyon, or other members of the Donnelly firm as presently constituted, actually possessed confidential information, various factors to be detailed below which suggest Mr. Jeffery's continued association with the firm could properly have led the district court to conclude that defendant's affidavit evidence was not sufficient to rebut the inference of impropriety.

**9.** *See* note 2, *supra.*

the *associated* firm of *Maky, Renner & Jeffery* . . . in Washington, D.C. Jeffery is the only man permanently *assigned* to that office . . . .

Pl. Appendix at 2 (emphasis supplied).[10] Also, in Mr. Boisselle's letter informing plaintiffs' counsel of Mr. Jeffery's previous representation of Schloetter—a letter dated more than one and one-half years after Mr. Jeffery is stated to have left the firm—Mr. Jeffery is listed on the letterhead as a partner and the text of the letter clearly leaves the impression that Mr. Jeffery is a present partner in the Donnelly firm (Pl. Appendix at 7).

Whatever the technical realities of Mr. Jeffery's "association" with the Donnelly firm, the appearances strongly suggest that he continues to maintain a substantial relationship with both the firm and certain of its members. The appearance of such an on-going "association" reinforces the inference of impropriety which is raised by the Donnelly firm's representation of defendant in the pending action.

Moreover, we think the district court's strict enforcement of Canon 9 was particularly appropriate in a case such as this where the subject matters involved in the former and present representations are so closely related. The validity and scope of the very patent Mr. Jeffery, while a Donnelly partner, helped to procure is at issue in the pending infringement action. In these circumstances, all doubt should be resolved in favor of disqualification in order to "prevent any possibility, however slight, that confidential information acquired from . . . [Schloetter] during a previous relationship may . . . be used to . . [Schloetter's] disadvantage" in this case. *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973).

Finally, defendant's reliance on *Silver Chrysler Plymouth v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975) and *Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322 (9th Cir., filed April 29, 1976) is misplaced. In both cases, a young associate left the employ of a large law firm (firm A) to join another firm (firm B). Subsequently, firm B represented the plaintiff in an action against a party represented by firm A, and the defendant filed a motion to disqualify firm B. Satisfied that the associate during his tenure at firm A had not been exposed to any matter substantially related to the subject matter of the pending action, the courts in both cases held disqualification of firm B was not required.

In *Gas-A-Tron* and *Silver Chrysler,* unlike the instant case, if there existed any appearance of impropriety, it was *de minimis.* The only fact arguably giving rise to such an appearance was that a member of firm B had at one time been employed by firm A. No attorney ever associated with firm B had represented the party seeking disqualification in a matter substantially related to the subject matter of the pending litigation. To have disqualified firm B under these circumstances would have meant depriving the client of the right to counsel of his own choosing without, at the same time, materially fostering high ethical standards of professional responsibility or public confidence in the legal profession.[11] As the court in *Silver Chrysler* noted, "[f]ulfilling the purpose of the disqualification remedy . . . does not require such a blanket approach." *Silver Chrysler, supra,* at 754.

This court is also mindful of the fact that it is necessary "to preserve a balance . . between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of profes-

---

10. *See also* the 1976 edition of *Martindale-Hubbell* which lists Mr. Jeffery as the resident partner in the firm of Maky, Renner & Jeffery and leaves the impression that the firm is the Washington office of the Donnelly firm (Pl. Appendix at 20).

11. It might also be noted that a different result in *Gas-A-Tron* or *Silver Chrysler* might have

severely restricted mobility within the legal profession. For, law firms would be understandably reluctant to hire a young lawyer who had previously worked at a large firm if it were to mean automatic disqualification from any case involving a party represented by the young lawyer's former employer.

sional responsibility," *Emle Industries, supra,* at 564–65, and that "Canon 9 . . . is not intended to override the delicate balance created by Canon 4," *Silver Chrysler, supra* at 757. It is with these caveats in mind that we hold the balance struck by the district court in disqualifying defendant's counsel is supported by the record and did not exceed the limits of its permissible discretion.

Accordingly, the orders of the district court are affirmed.

*Affirmed.*