**MPL, INC., Plaintiff,**

v.

**William COOK et al., Defendants.**

**No. 78 C 2316.**

United States District Court,
N. D. Illinois, E. D.

Oct. 9, 1980.

---

Ronald Wilder, Schiff, Hardin & Waite, Chicago, Ill., for plaintiff.

Douglas B. King, William P. Wooden, Wooden, McLaughlin & Sterner, Indianapolis, Ind., Robert E. Kehoe Jr., Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

At the time this action was reassigned to this Court, there were pending (in addition to the motions dealt with in this Court's September 30, 1980 memorandum opinion and order) three related fully–briefed motions:

1. defendants' motion for leave to have members of the law firm of Chapman & Cutler appear as counsel in addition to members of the firms of Wildman, Harrold, Allen & Dixon and Wooden, McLaughlin & Sterner, which have represented defendants from the outset of this action;

2. plaintiff's motion to compel certain discovery from Chapman & Cutler; and

3. Chapman & Cutler's cross–motion for a protective order.

For the reasons set forth in this memorandum opinion and order, defendants' motion is denied. Plaintiff's and Chapman & Cutler's motions are thereby rendered moot.

### The Facts

Chapman & Cutler represented an Illinois corporation ("MPL Illinois") named MPL, Inc., the same corporate name that plaintiff ("MPL Delaware") now bears, from MPL Illinois' commencement of operations in the early 1960s. During that period MPL Illinois and its president, Brian Baldwin ("Baldwin"), developed technology (including alleged trade secrets and other proprietary information) in connection with the manufacture of disposable hypodermic needles.

In March 1968 MPL Illinois sold all of its assets (including such proprietary information) to MPL Delaware, which continued the business operations formerly carried on by MPL Illinois. Although there was a change in corporate ownership, the business remained the same, with Baldwin continuing as MPL Delaware's president and chief executive officer. After the acquisition Chapman & Cutler continued to represent MPL Delaware in at least some respects (though the scope of representation is in issue, that question is not relevant in the view this Court takes of the case) and also continued to represent Baldwin.

MPL Delaware claims major breaches of fiduciary obligations by Baldwin in relation to its hypodermic needle business while Baldwin was still employed by MPL Delaware. After Baldwin left MPL Delaware's employ in August 1974, the claimed breaches of fiduciary obligations, including claimed violation of MPL Delaware's rights to its trade secrets and other proprietary information, allegedly continued. Those claimed breaches are the subject of litigation in the Circuit Court of Cook County, in which Chapman & Cutler represents Baldwin and Baldwin–owned corporations. This action arises out of the alleged knowing participation by defendants as co–conspirators in connection with Baldwin's claimed breaches.

Wooden, McLaughlin & Sterner, which represents defendants here, sought unsuccessfully to obtain leave to appear as co–counsel with Chapman & Cutler to represent Baldwin and other defendants in the Circuit Court proceeding (such a motion was denied both by the Illinois Appellate Court and by the Circuit Court of Cook County). Plaintiff asserts that both that effort and the Chapman & Cutler motion here are intended to permit the cross–pollenization of the alleged conspirators (the defendants in the two actions) with plaintiff's trade secrets and other proprietary information, thereby advancing the claimed conspiracy. Defendants and Chapman & Cutler respond that no such motivation exists, that defendants are simply seeking to assert their right to employ counsel of their choice, and that Chapman & Cutler can be relied on to comply with protective orders that exist in each lawsuit. Again the Court's view of the issues makes it unnecessary to deal with that dispute.

### Discussion

■■ One of the salient features of the approach taken by the Code of Professional Responsibility [1] in lawyer disqualification

1. Although this Court's General Rules 6(a)(i) and 8 D still refer to the "Canons of Ethics of the American Bar Association," citations in this opinion to the Code of Professional Responsi-

bility (which has of course superseded the former Canons of Ethics) will be to the Illinois Code adopted by its Supreme Court effective July 1, 1980. There would be no difference in

matters is that courts will not inquire into the *facts* of disclosure or non–disclosure of client confidences and secrets[2] by the lawyer. This is at the root of the concept of "infectious disqualification."[3] It would undercut the whole structure of the lawyer–client relationship if the existence and nature of communications between lawyer and client ·could be inquired into for purposes of deciding disqualification motions[4] (potential exposure of confidential communications is indeed a major basis for Chapman & Cutler's strenuous objections to plaintiff's discovery efforts here). But the price that must be paid is that disqualification often follows from the *appearance* and not the *fact* of impropriety. That is why the courts' rulings on disqualification motions often invoke Code Canon 9 ("A lawyer should avoid even the appearance of professional impropriety") even though it was not really intended to provide a substantive sweeping rule of law in this field.

Defendants' approach to plaintiff's motion is strongly redolent of the same exaltation of corporate form over substance that marked their motion to resist personal jurisdiction in this case.[5] It is entirely irrele-

vant that Chapman & Cutler's services that are conclusively deemed to have exposed it to client confidences and secrets (including the trade secrets and other proprietary information generated during the development of MPL Illinois' business)[6] were rendered to MPL Illinois rather than to MPL Delaware. It is irrelevant because MPL Delaware is now the owner of all the assets of MPL Illinois, including that proprietary information, so that Chapman & Cutler must stand in the same relationship to MPL Illinois with respect to that information (and with respect to all lawyer–client confidences and secrets learned during its representation of MPL Illinois to which MPL Delaware has succeeded).

That being the case, the problem is a simple one. For the issue is not only, as Chapman & Cutler posed it, whether it can be trusted to honor a protective order by not disclosing information to its present clients, Baldwin and his related companies. Instead the question is whether Chapman & Cutler, *itself* in possession of client confidences and secrets derived from its earlier representation, can represent someone else

---

result under the corresponding provisions of the ABA Code.

**2.** Code Rule 4-101 requires a lawyer to preserve not only "confidences" (information within the scope of the lawyer-client privilege) but also "secrets" (defined as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing to or would likely be detrimental to the client"). With *exceptions not relevant here,* Rule 4 101(b) prohibits revelation of such matters "during *or after* termination of the professional relationship" (emphasis supplied).

**3.** See generally Shadur, Lawyers' Conflicts of Interest: An Overview, 58 Chi.B.Rec. 190, 194 (1977). This Circuit's leading cases dealing with the problem are *Westinghouse Corp. v. Kerr ·McGee Corp.,* 580 F.2d 1311 (7th Cir. 1978); *Schloetter v. Railoc of Indiana, Inc.,* 546 F.2d 706 (7th Cir. 1976), and Judge Marshall's opinion in *Cannon v. U.S. Acoustics Corp.,* 398 F.Supp. 209 (N.D.Ill.1975), adopted by the

Court of Appeals as an "able and scholarly opinion," 532 F.2d 1118, 1119 (7th Cir. 1976).

**4.** *Schloetter,* 546 F.2d at 710, and *Cannon,* 398 F.Supp. at 223, each relying on *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 269 (S.D.N.Y.1953) (which has in turn led to the controlling Second Circuit decisions in this area).

**5.** Defendants there relied on the ground that the tortious activities of a parent corporation would not subject its corporate subsidiary and successor in interest to service of process under the Illinois long- arm statute. This Court rejected that notion in its September 30, 1980 memorandum opinion and order.

**6.** Plaintiff's claim is that Chapman & Cutler was an active participant in the development of those matters, including the drafting of documentation that established the trade secrets and proprietary information. This Court's inquiry into the particulars of that claim would undercut the public policy on which the notion of lawyer client confidentiality is grounded.

in litigation in which the subject matter of those confidences and secrets is in issue.[7]

That question is uniformly resolved against the new representation because the *lawyer* possesses knowledge, whether or not that knowledge may be communicated to the new client. Because the most honorable lawyer cannot perform a frontal lobotomy on himself, he cannot be presumed to engage in the new representation and carry out his obligation of undivided fidelity to the new client without the use—consciously or subliminally—of the confidences and secrets reposed in him by the old client. And for this purpose the knowledge of one lawyer in a firm is conclusively imputed[8] to all other lawyers. For that reason the courts will not not honor the claimed erection of a "Chinese wall" in such situations.[9]

This Court recognizes that application of the same analysis would also have disqualified Chapman & Cutler from representing Baldwin in the state court litigation, and that plaintiffs apparently failed to assert objections to such representations in that court. But no claim of laches or waiver can bar this Court from applying a prophylactic rule intended to protect the integrity of lawyer–client relationships and with it the ethics of the profession.

Accordingly, members of the Chapman & Cutler firm will not be given leave to become additional counsel to the able and experienced counsel already representing defendants.

---

**7.** Code Rule 5 105 is read by the cases in light of Rule 4 101, so that the term "client" embraces a *former* client.

**8.** *Westinghouse*, 580 F.2d at 1318; *Schloetter*, 546 F.2d at 710.

**9.** *Westinghouse*, 580 F.2d at 1321.