ARMCO, INC. and CF&I Steel Corporation, Plaintiffs,

v.

The UNITED STATES, Defendant,

Ah Ju Steel Co., Ltd., et al., Intervenors.

Court No. 80–9–01435.

United States Court of International Trade.

Aug. 4, 1981.

Freeman, Meade, Wasserman & Schneider, New York City (James M. Brachman and Beth Ring, New York City, at the oral argument and Jack Gumpert Wasserman and Beth Ring, New York City, on the briefs) for plaintiffs.

Daniels, Houlihan & Palmeter, Washington, D.C. (N. David Palmeter and Martin J. Lewin, Washington, D.C., at the oral argument and on the briefs) for intervenors.

Rivkin, Sherman & Levy, New York City (Saul Sherman, New York City, at the oral argument) for Daniels, Houlihan & Palmeter.

RICHARDSON, Judge:

This is a contested motion by plaintiffs, Armco, Inc. and CF&I Steel Corporation, for an order disqualifying the attorneys for intervenors, Ah Ju Steel Co., Ltd., et al., of Korea, from representing their clients in this action, which challenges the United States International Trade Commission's (ITC) negative determination of injury in an antidumping proceeding [steel nails from Korea].

On April 13, 1979, the Department of Treasury commenced an antidumping proceeding against certain steel wire nails from Korea pursuant to the Treasury Department's authority under the "trigger price mechanism". Under the then applicable antidumping statute the Treasury Department on April 17, 1979, advised the ITC that it had substantial doubt that an industry in the United States was being or is likely to be injured by reason of the importation into the United States of allegedly dumped merchandise. In transmitting this matter to the ITC, the Treasury Department stated: "Some of the information involved in this case is regarded by Treasury to be of a confidential nature. It is therefore requested that the Commission consider all the information provided for its investigation to be for the official use of the ITC only, not to be disclosed to others without prior clearance from the Treasury Department." [1]

On April 20, 1979, the ITC commenced an investigation to determine whether there was a "reasonable indication" that an industry in the United States was being or is likely to be injured by reason of the importation of the steel wire nails. On May 4, 1979, at a public hearing held by the ITC in this investigation, N. David Palmeter, a member of the firm of Daniels, Houlihan & Palmeter (Daniels' firm) appeared and testified on behalf of intervenors in this action.

Martin J. Lewin, an attorney presently with the Daniels firm is participating in this litigation. Lewin was employed by the ITC as a staff legal assistant from December 11, 1978, to January 11, 1979, when he became an Attorney Adviser to Commissioner Paula Stern, an economist, and continued such employment until June 1, 1979, when he joined the Daniels firm. He stated that while he was Attorney Adviser to Commissioner Stern during the preliminary investigation, he sent resumes to several Washington, D. C. law firms active in the trade area, and on May 9, 1979, he was interviewed at the Daniels firm, which was his first contact with the firm apart from his scheduling the interview.

May 10, 1979, according to Lewin's affidavit, he received an offer from said firm which he immediately accepted. On the same day he informed the Commissioner

1. 44 Fed.Reg. 24649 (1979).

and it was agreed he should not assist her or otherwise participate in any aspect of any matter before the ITC in which the Daniels law firm was involved. He said that "To the best of my recollection, my involvement in the inquiry consisted of a brief review of some initial material available to the ITC prior to the ITC's public hearing. . . . I have no specific recollection of the contents of the material reviewed." Lewin also stated that "I had no further involvement whatsoever with the inquiry and did not discuss any aspect of the matter with the Commissioner, her staff or any member or employee of the ITC."

May 17, 1979, the ITC unanimously determined that there was a "reasonable indication" of injury or likelihood of injury to a domestic industry by reason of the importation of certain wire nails from Korea.

May 19, 1980, the Department of Commerce determined that certain wire nails from Korea were being sold in the United States at less than fair value within the meaning of section 731 of the Tariff Act of 1930 (19 U.S.C. § 1673).

July 23, 1980 the ITC in a 3 to 2 decision made a Final Determination that there was neither material injury nor threat of material injury to American industry resulting from the importation of Korean nails. Plaintiffs appealed said Final Determination to this Court.

February 27, 1981, Martin A. Lewin, on behalf of the Daniels firm, counsel to Korean nail intervenors, signed and filed with this court, a motion for access to confidential documents in the investigation which led to the Final Determination under review by this court, under a protective order. Lewin's signing and filing of this motion in this litigation, prompted plaintiffs' to move for Lewin's disqualification, in view of his prior employment as Attorney Adviser by Commissioner Stern of the ITC, where he had access to confidential information in the preliminary investigation. Plaintiffs also seek the disqualification of the Daniels firm, which through its member, N. David Palmeter, the lead attorney, represented the intervenors in the preliminary investi-

gation, the investigation leading to the Final Determination and is appearing here with Lewin.

The nature of Lewin's position as Attorney Adviser to Commissioner Paula Stern when the preliminary inquiry was in progress, was such that confidential information ordinarily would have been communicated to him.

Lewin in an affidavit and in testimony at the oral argument on the motion to disqualify, stated that he had not at anytime during his employment with the Daniels firm, or prior thereto, "discussed the substance of the inquiry" or any confidential information he had received about the Korean nails while at the ITC, with anyone in the firm. (R. 39)

Lewin, did not deny that he had access to confidential documents. He admits having read certain documents, but says he has "no specific recollection of the contents of the material reviewed" during the preliminary investigation, prior to the ITC's public hearing.

Lewin's counsel stated, at the oral argument, that after Lewin's conference with Commissioner Stern, May 10, 1979, she took him off of the case, and that Lewin left the Commission before it made the investigation for its final determination.

▮ The matters involved in the present litigation (a review of the Final Determination of the ITC), are substantially related to the matters involved in the preliminary investigation when Lewin was an Attorney Adviser to Commissioner Stern. There could be no final determination without a preliminary inquiry to determine if there was "A Reasonable Indication of Injury."

The subject matter, certain steel wire nails from the Republic of Korea, in the preliminary inquiry was the same as in the investigation for the final determination. A reading of excerpts from the two proceedings in 1979 and 1980 clearly reveal the connection:

1. A reading of "Determination of A Reasonable Indication of Injury" in Inquiry No. AA 1921–Inq.–26, at page A–4:

The products included within the scope of this investigation are brads, nails, spikes, staples, and tacks of one-piece construction which are made of round steel wire and which are (1) less than 1 inch in length and less than 0.065 inch in diameter or (2) 1 inch or more in length, and 0.065 inch or more in diameter, and made of round steel wire, as provided for in items 646.25 and 646.26, respectively, of the TSUS.

2. The Determination of the Commission in Investigation No. 731–TA–26 (Final) under the Tariff Act of 1930, together with the information obtained in the investigation lists the same merchandise, at page 5:

The Department of Commerce determination of less-than-fair-value sales covers those articles entering the United States under items 646.25 and 646.26 of the Tariff Schedules of the United States (TSUS), which includes brads, nails, spikes, staples, and tacks of one-piece construction, made of round steel wire. TSUS item 646.25 provides for these articles which are under 1-inch in length and less than 0.065 inches in diameter. Item 646.26 provides for these articles which are 1-inch or more in length and 0.065 inches or more in diameter.

Also, the Preliminary Determination is referred to at page 13 of the Final Determination where it states:

"In the unanimous preliminary determination *in this case,* the Commission found a "reasonable indication of injury." (Emphasis added). Footnote two which follows this statement gives the precise citation to the preliminary investigation.

19 U.S.C. § 1516a, which provides for Judicial review in countervailing duty and antidumping duty proceedings, in subparagraph (b)(2) Record for Review, requires that the preliminary investigation be included in the file submitted to the court.

Thus the two investigations—the one when Lewin was with the ITC and the one when Lewin was with the Daniels firm, but in which he states he did not participate— are inextricably linked together as a part of this case, and must be considered by this court in deciding the issue of attorney disqualification.

Plaintiffs motion to disqualify Lewin asserts Lewin's representation is in direct contravention of the American Bar Association's Code of Professional Responsibility, Canon 9, and Disciplinary Rules 9–101(B).

Canon 9 states that:

A lawyer should avoid even the appearance of professional impropriety.

Disciplinary Rule 9–101(B) states that:

A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

The decisions on some motions to disqualify give great weight to the "appearance of impropriety". *General Motors Corporation v. City of New York,* 501 F.2d 639 (2nd Cir. 1974) in which Irving R. Kaufman, Chief Judge, held that an attorney hired to represent the City of New York in a matter in which said attorney had substantial responsibility while a public employee with the Department of Justice in an antitrust action, gave the appearance of professional impropriety under Canon 9, which would have to be avoided through the disqualification of the attorney. Chief Judge Kaufman stated further at page 648 that: "Providing a measure of specificity to this general caveat, DR9–101(B) commands:

A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

Kaufman, *supra,* in 70 Harv.L.Rev. at 664 wrote that:

If there was a likelihood that information *pertaining* to the pending matter reached the attorney, although he did not "investigate" or "pass upon" it, . . . there would undoubtedly be an appearance of evil if he were not disqualified. (Emphasis added).

The District Court judge who reached a different result was reversed.

Five years later Jack B. Weinstein, District Judge of the Second Circuit, took the

position that "The possibility of an attorney's representation in a given case may give rise to an 'appearance of impropriety' is not enough to disqualify." *Society For Good Will To Retarded, Inc. v. Carey*, 466 F.Supp. 722, at 724 (1979). The Judge cited *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1247, (2nd Cir. 1929) where the Court of Appeals receded from its earlier emphasis on the appearance of impropriety as the standard in favor of the taint of trial as the standard. It stated that where "there is no claim that the trial will be tainted, appearance of impropriety is simply a slender reed on which to rest a disqualification order in the rarest cases."

The same Court of Appeals sitting en banc in the case of *Armstrong v. McAlpin*, 625 F.2d 433 (1980) *Petition for Cert. Pending*, adhered to its standard that the test is whether the trial would be tainted if a counsel complained against were not disqualified.

The Court does not have to rely on the appearance of impropriety alone in this case to disqualify Lewin. Lewin had substantial responsibility over the subject matter of this litigation, Korean wire nails, while a government employee as attorney adviser to Commissioner Stern. He admitted that he had access to confidential documents in the matter during the preliminary investigation. It has been shown above that the matters embraced within this case were substantially related to matters before the ITC when Lewin was Attorney Adviser to one of the commissioners. The plaintiff does not need to show more. See: Edward Weinfeld, District Judge in *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 at 268 (1953). The Court holds that Lewin is disqualified from participating in this litigation by virtue of his having received privileged information as a government employee with the ITC which was unavailable to plaintiffs.

Since Lewin is disqualified in this case the question of whether his disability to continue is imputed to the Daniels firm must be addressed.

The American Bar Association Disciplinary Rule 5–105(D) extends every disqualification of a lawyer to all affiliated lawyers in his firm. When this rule is considered in connection with Disciplinary Rule 9–101(B) which prohibits a former government lawyer from accepting "private employment in a matter in which he had substantial responsibility while he was a public employee," the disqualification of an entire law firm is required. To mitigate some of the harsh effects of this Rule, the American Bar Association Ethics Committee issued formal opinion number 342 which permits a law firm to continue in a case where the disqualified member of the firm has been screened and effectively isolated from participation in the particular matter or sharing in its fees. If the law firm has not screened the disqualified attorney, the firm may not continue in the case. The lead counsel in the Daniels firm, Palmeter, stated on the stand at the oral argument that he had not received any confidential information from Attorney Lewin, that his law firm was a small firm and for that reason the firm had not screened Lewin from the case. It doesn't matter whether confidences were in fact imparted by Lewin to the Daniels firm. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980); *The NCK Organization Ltd. v. Bregman*, 542 F.2d 128, 132–34 (2nd Cir. 1976); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318 (7th Cir. 1978); *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir. 1976); See, the comment on Firm Disqualification in 55 *St. Johns Law Review* 346.

When lead counsel, Palmeter, stated that Lewin was not screened, the exception provided in rule 342 became unavailable, and the Daniels law firm must be disqualified.

Both Attorney Lewin and his law firm, Daniels, Houlihan & Palmeter, are disqualified and cannot continue in this case as attorneys for intervenors.