**John B. BRECKINRIDGE, Plaintiff,**

v.

**BRISTOL–MYERS COMPANY and Mead Johnson & Company, Defendants.**

No. EV 83–34–C.

United States District Court, S.D. Indiana, Evansville Division.

July 19, 1985.

Theodore Lockyear, Lockyear & Kornblum, Steve Barber, Evansville, Ind., for plaintiff.

Francis Carling, Winthrop, Stimson, Putnam & Roberts, New York City, F. Wesley Bowers, Bowers, Harrison, Kent & Miller, Evansville, Ind., for defendants.

## MEMORANDUM ENTRY

BROOKS, District Judge.

Pending before the Court are cross motions to disqualify counsel. In addition to the motion to disqualify counsel, the defendants further seek to disqualify the plaintiff, an attorney, from proceeding as a party to this action. The result of such disqualification, quite obviously, would be the dismissal of this lawsuit. The Court enters its rulings on both motions in this entry.

## I

### DEFENDANTS' MOTION TO DISMISS AND/OR DISQUALIFY COUNSEL

John B. Breckinridge was an attorney for one or both defendants from 1959 until 1982. The defendants characterize him as Mead Johnson & Company's ("Mead Johnson") chief legal officer. Breckinridge was retired in 1982 at age 65 holding titles of vice president and senior division counsel. He brought this lawsuit pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, in which he claims his forced retirement was unlawful. The defendants assert as a defense an exception to ADEA stated at 29 U.S.C. § 631(c)(1) which exempts employees from coverage who hold "bona fide executive" and/or "high policy-making" positions. A determination of Breckinridge's status clearly is pivotal to his case and is a matter properly left to the trier of fact.

The defendants' motion to disqualify counsel is based upon an allegation that the plaintiff breached his duty to keep confidential matters between himself and his clients, the defendants. In summary, these alleged instances of misconduct include:

(1) Plaintiff reported to his current counsel the substance of conversations between himself as defendants' attorney and officers/employees of the defendant. The defendants contend these conversations may be relevant to this action and that the plaintiff's revelation of those confidences breaches disciplinary rules imposed upon him and will result in his former clients' detriment.

(2) Plaintiff removed photocopies of his chronological file, a compilation of the correspondence, memoranda, and written work product, and turned that file over to his current counsel. The defendants claim the chronological file contains matters within the attorney-client privilege and that confidences have been breached by the plaintiff's actions.

(3) The plaintiff removed notes of an attorney-client conversation between subordinate attorney Deane Anne Johnson and

Larry Simon, an employee of the defendants.

(4) The plaintiff removed a copy of a legal opinion rendered for the defendants by an outside law firm, Winthrop, Stimson, Putnam & Roberts. Defendants claim the contents of that opinion were privileged and may be used by the plaintiff wrongfully in support of his case.

The defendants insist they have not waived the attorney-client privilege at any time during or before this litigation. They further contend the plaintiff has exploited the privileged and confidential information he possessed or removed during the course of discovery in this litigation. For these reasons, the defendants seek an order of this court barring the plaintiff from proceeding with his case.

A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity. *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir.1983); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982). Such a motion is within the sound discretion of the court. *English v. Local Union No. 46*, 654 F.2d 473 (7th Cir.1981). The court's power to consider a motion for disqualification is "broad," *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir.1976), but must be exercised with caution: "A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing." *Freeman, supra*, 689 F.2d at 721.

The issue before the court in the instant case, however, is distinct from the line of cases following *Scholetter* and summarized recently in *Analytica, Inc. v. NPD Research*, 708 F.2d 1263 (7th Cir.1983). The Court need not make extensive inquiry into the past representation by the counsel sought to be disqualified or determine whether a "substantial relationship" existed between that prior representation and the subject matter of the instant case. That much is readily conceded here. Breckinridge represented these defendants in a variety of matters. He discussed the subject matter of the instant case while still in the defendants' employ. The question before the Court is whether, as the plaintiff contends, his attempt to vindicate a personal right exonerates him from at least some of the duties imposed by Disciplinary Rule 4–101 and whether the information in the plaintiff's possession, and which conceivably violates the confidences of his former client, has so tainted this litigation as to render dismissal the lone adequate remedy for such breaches.

Disciplinary Rule 4–101(B) states:

Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his Disciplinary Rules or required by law or court order.

(3) The intention of his client to commit a crime and the information necessary to prevent a crime.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

This latter exception has been amplified in footnotes to the rules and in ABA opinions. ABA Opinion 250 (1943) is helpful in amplifying the exceptions:

So if it became necessary for the attorney to bring an action against the client, the client's privilege could not prevent the attorney from disclosing what was essential as a means of obtaining or defending his own rights.

\* \* \* \* \* \*

It has frequently been held that the rule as to privileged communications does not apply when litigation arises between attorney and client to the extent that their communications are relevant to the issue. In such cases, if the disclosure of privileged communications becomes necessary to protect the attorney's rights, he is released from those obligations of secrecy which the law places upon him.

He should not, however, disclose more than is necessary for his own protection. It would be a manifest injustice to allow the client to take advantage of the rule of exclusion as to professional confidence to the prejudice of his attorney, or that it should be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights. In such cases the attorney is exempted from the obligations of secrecy.

The Code of Professional Responsibility, from which the Disciplinary Rules quoted above are taken, has been expressly adopted as the standard of conduct for attorneys practicing in this Court. Local Rule 1(f).

It is defendants' contention that the district court decision in *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209 (N.D.Ill. 1975), *aff'd*, 532 F.2d 1118 (7th Cir.1978), makes the remedy of dismissal and disqualification incumbent upon the Court in the instant case. At issue in that case was a motion to disqualify attorney Charles B. Cannon who was a plaintiff in a shareholders' derivative action against Cannon's former corporate client. Cannon had represented the defendant in prior matters substantially related to issues in the derivative action. The defendants successfully contended that Cannon could not prosecute or be a party to the litigation consistent with the Code of Professional Responsibility. In so ruling, the district court (in an opinion adopted by the Seventh Circuit) was guided by *Richardson v. Hamilton International Corp.*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973), which similarly had disqualified an attorney as a party to a derivative action against a former client. The *Cannon* court concluded after reviewing the entire factual setting (398 F.Supp. at 227–28) that Cannon's prior representation of the defendant had been so "lengthy and pervasive" that disqualification was also compelled under Canon 9 of the Code of Professional Responsibility.

The plaintiff relies upon *Doe v. A. Corp.*, 709 F.2d 1043 (5th Cir.1983), which concluded, "A lawyer … does not forfeit his rights simply because to prove them he must utilize confidential information. Nor does the client gain the right to cheat the lawyer by imparting confidences to him." *Id.* at 1050. The logical distinction the plaintiff would have the Court draw in this case is that where a personal right, rather than a derivative right, is sought to be vindicated, confidential information may be used by the plaintiff/attorney within careful limitations and the Court's scrutiny.

This Court disdains the remedy of dismissal where such can be avoided by a logical application of the law and a common sense approach to remedy a dispute. The defendants repeatedly argue that Breckinridge was under a duty to "change hats" in full view of his clients at some point during the discussions preceding this lawsuit. Indeed, the Seventh Circuit places a substantial burden on attorneys to "disavow" their status as attorney and to keep clients apprised of potential conflicts. *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1320–21 (7th Cir.1978), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). But the Court, as a practical matter, is unable to conclude that Breckinridge's recollection of conversations with Mead Johnson officers and employees about his circumstances, and his later relating those conversations to his current counsel, are sufficient to violate the letter or spirit of D.R. 4–101.

The defendants' argument strikes the Court as insincere. They contend in hindsight that Mead Johnson officers and employees were consulting the plaintiff for legal advice that related to his own retirement. The record reveals that the plaintiff's potential forced retirement, and his resistance thereto, were well known to all parties. Suggesting that conversations between Breckinridge and Mead Johnson officers—which initially were aimed at amicable resolution of this dispute—were conducted within the attorney/client protections strains credulity. More than anything else, these were conversations between an employer and an employee who happened to be an attorney. The hind-

sight-guided argument that the plaintiff's conversations with his employer, and any knowledge or insight acquired therein, should compel dismissal simply falls short. Common sense and caution might have dictated that Breckinridge attempt to avoid this trap. But if defendants really believed they were consulting legal counsel for advice on his own forced retirement, their naivete should not be rewarded by dismissal of this lawsuit.

The remaining instances of alleged breaches of attorney/client privilege are more troubling to the Court. These allegations involve removal of items from the defendants' files which the plaintiff believes will aid his cause of action.

The chronological file, for instance, probably contains discoverable materials which are relevant to the ultimate classification of Breckinridge's duties—whether the defendants' defense will hold up is dependent on a description and verification of precisely what Breckinridge did while in their employ. The Court presumes the contents of that file are potentially helpful to both sides. There is further the evident confusion over whether one of the defendants' officers permitted Breckinridge to remove the chronological file. That dispute is not easily solved on this record. While the Court is inclined to side with the defendants in finding the file falls within the attorney/client privilege, the conclusion is inescapable that contents of that file are discoverable. The parties will be ordered to review the file for contents which would have been discoverable, but the plaintiff is not entitled to retain any photocopies not deemed to be discoverable.

The Court finds that the Deane Anne Johnson memorandum of her conversation with Larry Simon, regardless of her "voluntary" submission to the plaintiff, her superior, also is within the defendants' attorney/client privilege and that no waiver of that privilege has occurred in this case. The Court further finds that the legal opinion prepared by the Winthrop, Stimson law firm also is a document protected by the attorney/client privilege. No matter how

one chooses to classify these documents, the contents remain a matter of confidence between the defendants and their counsel. Access to those documents by an aggrieved employee/attorney does not grant him license to collect and disseminate their contents because he believes it helpful to his cause of action.

Breckinridge's conversations with his bosses are one matter; the removal of arguably relevant documents presents quite another. "A client does not gain a right to cheat a lawyer by imparting confidences to him," *Doe*, 709 F.2d at 1050, but there is an important distinction to draw between allegedly confidential matters learned in conversations about one's status or reflected in one's own files and the memoranda prepared by others and simply taken without regard to the client's confidences. The plaintiff was seeking every angle to make his case while still employed; that did not give him license to review his client/employer's files and documents and without permission, to then remove them for his own benefit.

The Court nevertheless is faced with the vexatious problem of remedying this situation, preferably without dismissing the lawsuit. In this sense, the Court concludes the reasoning in *Doe, supra,* is more in line with this fact situation than is *Cannon.* Although the Seventh Circuit has not yet decided a case where the attorney attempts to vindicate a personal right as his major cause of action, this Court does not read *Cannon* to bar attorneys in Breckinridge's shoes from pursuing the case presented here. In addition, the Court does not agree that the breaches of confidence herein have so tainted the case as to render a fair trial impossible. The Johnson memo and the Winthrop, Stimson opinion may well be viewed by the parties as significant for different reasons, but the Court perceives this case could continue without the plaintiff's reference to those documents and without prejudice to the defendants. Moreover, the Court also believes the contents of the chronological files would have been discoverable in some form, perhaps expurgated or stipulated, but nevertheless part

84

of the record. What Breckinridge *did* as the defendants' employee is assuredly relevant and pivotal in this case.

By deciding that Breckinridge was at least partially in the wrong but that dismissal is an unwarranted remedy, the Court imposes on itself the onerous duty of vigilance as this litigation continues. In so doing, the Court endeavors to be fair to both sides until the case is resolved, preferably avoiding disclosure of information within the defendants' attorney/client privilege, but permitting the plaintiff to present his case within the rules of the court and his profession.

According, the Court enters the following orders:

1. The plaintiff is ORDERED to return to the defendants any original or photocopied memoranda prepared by Deane Ann Johnson or the Winthrop, Stimson, Putnam & Roberts law firm at issue in the motion herein considered.

2. The parties are ORDERED to undertake a review of the chronological file, pursuant to Local Rule 13, and reach accord on those filings which would have been discoverable through ordinary procedures had Breckenridge not removed the file. Magistrate John Paul Godich will thereafter convene a pre-trial conference during which any disputes regarding that discovery may be resolved. The magistrate shall have the discretion to resolve disputes as to relevance and discoverability, and any remaining portions of the plaintiff's photocopies not deemed relevant or discoverable will be returned to the defendants forthwith.

3. The parties are ORDERED to avoid framing future discovery motions or requests by reference to documents protected by this order.

The defendants' motion to dismiss is DENIED.

■ The Court sees no value in disqualifying plaintiff's counsel in this case. Because the Court already has found the case is insufficiently tainted to warrant dismissal, there would be little sense in requiring the plaintiff to lose counsel of his choosing and re-commence the discovery and necessary preparation of the litigation. The motion to disqualify counsel is DENIED.

II

## PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

■ The plaintiff seeks to disqualify principal counsel for the defendants, Francis Carling, and the law firm of Winthrop, Stimson, Putnam & Roberts, based upon Carling's involvement in this case prior to the litigation. In summary, the plaintiff alleges that Carling prepared, at the instance of Bristol-Myers, a statement summarizing the plaintiff's duties at Mead Johnson for submission to the Equal Employment Opportunity Commission. Apparently, the defendants were seeking guidance, before commencement of this litigation and before its decision to retire Breckenridge involuntarily, as to whether the plaintiff's duties placed him within the exemption of § 631(c)(1). Carling's contacts with the EEOC occurred without the plaintiff's knowledge, and the plaintiff is critical of the submissions and their accuracy. It is alleged that Carling sought an EEOC opinion which would ratify the advice his firm already had given to Bristol-Myers, *i.e.,* that Breckinridge's duties were within the § 631 exemption. The EEOC refused to do so, and Carling re-submitted a set of facts, the accuracy of which the plaintiff more vigorously protests, to the legal staff of the EEOC. An informal decision favorable to the defendants was issued. Efforts to secure a formal opinion were unsuccessful.

The plaintiff asserts this scenario is relevant to the good faith defense raised by the defendants in their answer. Moreover, the plaintiff insists that Carling, claimed to be a "dominant" figure in that pre-litigation activity, must be called as a witness either by the defendant to establish the defense or by the plaintiff to undermine the defense.

The plaintiff's motion to disqualify directs the court to consider application of Disciplinary Rule 5–102 which states:

(A) If, after undertaking employment in contemplated or pending litigation, a

lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

In order to succeed on the motion presented, the plaintiff must establish a factual foundation for its assertion that Carling *ought* to testify or that the testimony elicited by the plaintiff when calling Carling to the witness stand will be prejudicial to the defendants.

That counsel should avoid appearing both as advocate and witness except under special circumstances is beyond question. *United States v. Morris,* 714 F.2d 669, 671 (7th Cir.1983); *United States v. Johnston,* 690 F.2d 638 (7th Cir.1982) (en banc). However, there must be some rational basis in the record to support a court's disqualification of counsel based upon D.R. 5–102.

The Court finds the plaintiff has failed to establish that the defendants ought to call Carling to testify. The issue at trial is the defendants' good faith, not Carling's good faith. If the facts given to Carling were misleading or erroneous, representatives of the defendants who relayed that information to counsel may be questioned. Suggestions that Carling orchestrated misinformation is without support in this record. Carling was a courier of his client's knowledge and compilation of the facts; that does not convert him into a defendant or a witness who ought to testify in these proceedings.

In addition, there is no support for the assertion that any testimony Carling might give would be prejudicial to his clients. If an attorney feels his testimony will be prejudicial to his client then it is incumbent upon him to withdraw. *U.S. v. Reeder,* 614 F.2d 1179, 1186 (8th Cir.1980). The intensity of Carling's contrary protestations and the absence of a factual foundation to support plaintiff's contention that Carling's testimony would be prejudicial to his client lead this Court to a conclusion that the motion is not well taken.

Because the plaintiff has failed to establish the necessary foundation for disqualification of counsel for a violation or potential violation of Disciplinary Rule 5–102, the motion is hereby DENIED.