AH JU STEEL CO., LTD., et al., Appellants,

v.

ARMCO, INC., CF&I Steel Corp., and the United States, Appellees.

AH JU STEEL CO., LTD., et al. and the United States, Appellants,

v.

ARMCO, INC., and CF&I Steel Corp., Appellees.

Appeal Nos. 82–1, 82–4.

United States Court of Customs and Patent Appeals.

June 10, 1982.

Saul L. Sherman, Dennis A. Adelson, New York City, for appellants, Ah Ju Steel Co., Ltd., et al.

Michael H. Stein, Warren H. Maruyama, Washington, D. C., for the Intern. Trade Com'n.

Bernard J. Babb, Herbert Peter Larsen, New York City, for appellees, Armco, Inc.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is from an order of the United States Court of International Trade of August 4, 1981, granting the motion of appellees, plaintiffs below, to disqualify the law firm representing appellants, intervenors below. 2 CIT ——, 520 F.Supp. 1220 (1981). We reverse.

The material facts in this case are not in dispute, and are adequately set forth in the opinion below, familiarity with which is assumed. The issues involved in this case are whether an order disqualifying counsel is appealable, and, if it is, whether there was reversible error in the trial court's finding that Martin J. Lewin, an associate in the law firm of Daniels, Houlihan & Palmeter, had "substantial responsibility" for the matter herein[1] while he was an "attorney advisor" for Commissioner Paula Stern at the International Trade Commission (ITC) in late 1978 and early 1979.

### Appealability

Appellees raise as a threshold issue the question whether an order granting a motion to disqualify counsel is appealable immediately as a collateral order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). They do not deny that the circuits have uniformly determined that such orders are appealable under their jurisdictional statute, 28 U.S.C. § 1291,[2] identical in all material respects to ours, 28 U.S.C. § 1541(a).[3] Rather, they rely on policy considerations enunciated in *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), wherein the Court held that orders *denying* motions to disqualify counsel are not appealable. The Court ex-

---

1. The "matter herein" comprises the preliminary and final antidumping investigations of steel wire nails from the Republic of Korea. The ITC has filed a brief in this court requesting that we "modify the ruling of the Court of International Trade to correct its ambiguous and overbroad interpretation of DR 9–101(B)." The ITC objects chiefly to what it terms an unwarranted broadening of the term "matter" in DR 9–101(B) to include all "substantially related" matters. According to the ITC's interpretation of the decision below, matters are "substantially related" when they involve the same products from the same country. This broadening is said to be unwarranted in this case because, the ITC asserts and appellants concede, the preliminary and final investigations herein involved are the *same* matter. We agree they are the same matter, but, due to our reversal of the lower court on other grounds, we have no occasion to pass on the propriety of the definition of "matter" the court may have used.

2. 28 U.S.C. § 1291 provides:
   The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the Unit-

ed States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

Decisions which have held that orders granting motions to disqualify are appealable include *General Electric Co. v. Valeron Corp.*, 608 F.2d 265, 266–67 (6th Cir. 1979), *cert. denied*, 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Board of Education v. Nyquist*, 590 F.2d 1241, 1247 n.8 (2d Cir. 1979); *Aetna Casualty & Surety Co. v. United States*, 570 F.2d 1197, 1200 (4th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Schloetter v. Railoc of Indiana*, 546 F.2d 706, 709 (7th Cir. 1976); and *Woods v. Covington County Bank*, 537 F.2d 804, 809–810 (5th Cir. 1976).

3. 28 U.S.C. § 1541(a), as amended by Act of Oct. 10, 1980, Pub.L.No.96–417, Title IV, § 401(a)(1), provides:
   The Court of Customs and Patent Appeals shall have exclusive jurisdiction of appeals from all final decisions of the Court of International Trade.

plicitly noted in *Firestone*, however, that it was expressing no opinion on the appealability of an order granting a motion to disqualify, such as we confront here. 449 U.S. at 372 n.8. Thus, such orders technically remain appealable, and, in fact, at least four circuits since *Firestone* have reaffirmed their appealability.[4] In short, neither appellees' argument nor our independent review of the issue persuades us to part company with the circuits which have considered this issue. We therefore hold that the order granting the motion to disqualify counsel is appealable immediately as a collateral order.

### Merits

Disciplinary Rule (DR) 9–101(B) of the Code of Professional Responsibility as adopted by the American Bar Association (ABA) provides:

A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

As a disciplinary rule, this provision is "mandatory in character" and states "the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." *ABA Code of Professional Responsibility*, Preliminary Statement (1976). Thus, it often forms the basis of a disqualification motion, either alone as an expressly adopted court rule, or, as here, as a minimum standard of conduct used by

the trial court as a guide in exercising its inherent authority to regulate those who practice before it.

The crucial portion of the lower court's opinion is short and to the point:

Lewin had substantial responsibility over the subject matter of this litigation, Korean wire nails, while a government employee as attorney adviser to Commissioner Stern. He admitted that he had access to confidential documents in the matter during the preliminary investigation. It has been shown above that the matters embraced within this case were substantially related to matters before the ITC when Lewin was Attorney Adviser to one of the commissioners. The plaintiff does not need to show more. * * * The Court holds that Lewin is disqualified from participating in this litigation by virtue of his having received privileged information as a government employee with the ITC which was unavailable to plaintiffs. [520 F.Supp. at 1224.]

Appellants concede that we may reverse the lower court's determination that Lewin had substantial responsibility within the meaning of DR 9–101(B) only if that determination is clearly erroneous. This is the appropriate standard of review if a finding of substantial responsibility is a factual determination.[5] At least one court has so treated such a finding. *Taxpayers, Homeowners and Tenants Protective Ass'n, Inc. v. Haber*, 634 F.2d 182, 183 (5th Cir.

---

**4.** *Greitzer & Locks v. Johns-Manville Corp.*, No. 81–7379, slip op. at 4 (4th Cir. Mar. 5, 1982); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 658 F.2d 1355, 1356–58 (9th Cir. 1981); *Glueck v. Jonathan Logan Inc.*, 653 F.2d 746, 748 n.2 (2d Cir. 1981); *Duncan v. Merrill, Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1027 (5th Cir. 1981).

**5.** 28 U.S.C. § 2601(c) provides:
(c) The Court of Customs and Patent Appeals may affirm, modify, vacate, set aside, or reverse any judgment or order of the Court of International Trade lawfully brought before it for review, and may remand the cause and direct the entry of an appropriate judgment or order, or require such further proceedings as may be just under the circumstances. *Findings of fact shall not be set*

*aside unless clearly erroneous and due regard shall be given to the opportunity of the Court of International Trade to judge the credibility of the witnesses.* A party may raise on appeal the question of whether the findings of fact are clearly erroneous, whether or not the party raising such question made an objection to such findings in the Court of International Trade or made a motion to amend such findings. The judgment or order of the Court of Customs and Patent Appeals shall be final and conclusive unless modified, vacated, set aside, reversed, or remanded by the Supreme Court under section 2106 of this title [28 U.S.C. § 2106]. (As amended Oct. 10, 1980, P.L. 96–417, Title IV, § 403(a)–(d), Title V, § 501(27), (28), 94 Stat. 1740, 1742.) (Emphasis ours.)

1981). We assume without deciding that whether an individual had substantial responsibility in a matter is a factual determination rather than a conclusion of law. Accordingly, we apply the clearly erroneous standard here. Doing so, we reverse the lower court's determination because, on the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).[6]

■ Our analysis of all the evidence centers on the factual basis on which the trial court rested its finding of substantial responsibility, that is, on the undisputed fact that Lewin had access to confidential information pertaining to the matter herein. This fact by itself does not support a finding that Lewin had substantial responsibility. As a matter of logic, substantial responsibility is related to access to confidential information only to the extent that the proposition is true that only individuals who have substantial responsibility in a matter have access to confidential information related to that matter. We do not accept this proposition as being true in general, nor does the evidence demonstrate its truth in this case.

Access to confidential information also enters into the analysis indirectly to the extent it may create an appearance of impropriety, the avoidance of which is one of several policy considerations useful in determining how expansively one should read the term "substantial responsibility." *ABA Committee on Professional Ethics, Opinions*, No. 342 (1975), *reported in* 62 A.B.A.J. 517–21 (1976).[7] No tenable reading of that term, however, is expansive enough to include Lewin's slight involvement in this case as established by the evidence. An appearance of impropriety, such as may arise when a former government attorney who had access to confidential information in a matter appears in connection with that matter in private practice, has also in the past been used as an independent basis for disqualification, quite apart from whether a disciplinary rule has been violated. *General Motors Corp. v. City of New York*, 501 F.2d 639, 649, 652 (2d Cir. 1974). As the court below appreciated, however, the trend is now away from disqualification based solely on an appearance of impropriety and towards disqualification only when continued representation will taint the underlying trial, especially where, as here, the appearance of impropriety is not very clear. *Board of Education v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir. 1979). We can see no danger that a review of the ITC's "no injury" determination, limited as it is to a closed administrative record, will be tainted if Lewin and the firm of Daniels, Houlihan & Palmeter are permitted to continue representing intervenors below.

■ Thus, the fact that Lewin had access to confidential information cannot, by it-

---

6. We are aware of authority for the proposition that where facts are not in dispute, district courts enjoy no particular advantage over appellate courts in their formulation and application of ethical norms and that it is proper for the appellate court to determine whether the district court's disqualification order was predicated on a proper understanding of applicable ethical principles. *Greitzer & Locks v. Johns-Manville Corp.*, No. 81–7379, slip op. at 5 (4th Cir. Mar. 5, 1982); *Aetna Casualty & Surety Co. v. United States*, 570 F.2d 1197 (4th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976). Because we hold that the lower court's determination in this case is reversible as clearly erroneous, we need not consider whether a less stringent standard of review may be applicable.

7. The policy considerations which the ABA has suggested be taken into account in interpreting DR 9–101(B) are

    * * * the prevention of the apparent treachery of switching sides; the safeguarding of confidential governmental information from future use against the government; the need to discourage government lawyers from handling particular assignments in such a way as to encourage their own future employment in regard to those particular matters after leaving government service; and the professional benefit derived from avoiding the appearance of evil.

Of these, the ABA formal opinion labels avoiding the appearance of evil as "perhaps the least useful." We believe that our disposition of the present case is consonant with each of these policy considerations.

self, support a finding that he had substantial responsibility, especially where, as here, the remaining evidence rebuts that finding. Lewin was at the ITC less than seven months. He stated in the affidavit he submitted to the trial court that:

On or before May 10, 1979, the Commissioner and I concurred that I should not assist her or otherwise participate in any aspect of any matter before the ITC in which [the law firm of Daniels, Houlihan & Palmeter] was involved. I had no further involvement with the Inquiry and did not discuss the matter with the Commissioner, her staff, or any member or employee of the ITC. At no time did I assist the Commissioner in her deliberations or advise or make any recommendations with regard to the Commissioner's determination in the Inquiry. To the best of my recollection, my only involvement in the Inquiry consisted of a brief review of some initial material available to the ITC prior to the ITC's public hearing.

Nothing in the record contradicts these assertions, so we accept them as true. They establish that Lewin had *no* responsibility for the matter herein after May 10, 1979, after the public hearing but before the preliminary determination, and extremely limited contact with the matter before May 10. The finding of the trial court, on the same evidence, that Lewin had substantial responsibility is therefore clearly erroneous.

The decision of the Court of International Trade disqualifying Mr. Lewin and the firm with which he is associated is *reversed.*

