**ARMCO, INC. and CF & I Steel Corporation, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**and**

**Ah Ju Steel Co., Ltd., et al., Intervenors.**

**Court No. 80–9–01435.**

United States Court of International Trade.

Aug. 22, 1983.

See also C.I.T., 520 F.Supp. 1220.

Freeman, Wasserman & Schneider, New York City (Bernard J. Babb, New York City, on brief), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., Washington, D.C. (Francis J. Sailer, Washington, D.C., on brief), Michael H. Stein, Gen. Counsel, United States International Trade Com'n, Washington, D.C. (Warren H. Maruyama, Washington, D.C., on brief), for defendant.

Daniels, Houlihan & Palmeter, Washington, D.C. (N. David Palmeter, Washington, D.C., on brief), for intervenors.

FORD, Judge:

Plaintiffs have instituted this action to review a determination by the United States International Trade Commission that a United States industry has not been materially injured or threatened with material injury by reason of sales of steel wire nails from the Republic of Korea. This matter was originally assigned to the late Judge Scovel Richardson and reassigned following his untimely death.

The Court has before it plaintiffs' motion for summary judgment. Plaintiffs also moved for a preliminary injunction to enjoin the liquidation of all entries made or withdrawn from warehouse on or after May 23, 1980 and before February 2, 1982. In addition, plaintiffs seek to have the action remanded to the International Trade Administration to determine whether any false or fraudulent statements submitted to them influenced their determination published on May 23, 1980 (45 Fed.Reg. 34944). Plaintiffs further request all liquidations of entries made after December 14, 1982 on merchandise entered between May 23, 1980 and February 2, 1982 be set aside and stayed. Defendant has moved to dismiss for mootness.

Section 516A of the Tariff Act of 1930, as amended (19 U.S.C. § 1516a) provides, in relevant part:

(a) *Review of determination.*

\* \* \* \* \* \*

(2) *Review of determinations on record.*

(A) In general. Within thirty days after the date of publication in the Federal Register of—

(i) notice of any determination described in clause (ii), (iii), (iv), or (v) of subparagraph (B),

\* \* \* \* \* \*

an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.

(B) Reviewable determinations. The determinations which may be contested under subparagraph (A) are as follows:

\* \* \* \* \* \*

(ii) A final negative determination by the Secretary, the administering authority, or the Commission under section 303, 705, or 735 of this Act [19 USCS § 1303, 1671d or 1673d].

(b) *Standards of review.*

(1) *Remedy.* The court shall hold unlawful any determination, finding, or conclusion found—

\* \* \* \* \* \*

(B) in an action brought under paragraph (2) of subsection (a), to be unsupported by substantial evidence on the record, or otherwise not in accordance with law.

(2) *Record for review.*

(A) In general. For the purposes of this subsection, the record, unless otherwise stipulated by the parties, shall consist of—

(i) a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding, including all governmental memoranda pertaining to the case and the record of ex parte meetings required to be kept by section 777(a)(3) [19 USCS § 1677f(a)(3) ]; and

(ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register.

\* \* \* \* \* \*

(c) *Liquidation of entries*

(1) *Liquidation in accordance with determination.* Unless such liquidation is enjoined by the court under paragraph (2) of this subsection, entries of merchandise of the character covered by a determination of the Secretary, the administering authority, or the Commission contested under subsection (a) shall be liquidated in accordance with the determination of the Secretary, the administering authority, or the Commission, if they are entered, or withdrawn from warehouse, for consumption on or before the date of publication in the Federal Register by the Secretary or the administering authority of a notice of a decision of the United States Court of International Trade, or the United States Court of Appeals for the Federal Circuit, not in harmony with that determination. Such notice of a decision shall be published within ten days from the date of the issuance of the court decision.

(2) *Injunctive Relief.* In the case of a determination described in paragraph (2) of subsection (a) by the Secretary, the administering authority, or the Commission, the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a re-

quest by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

\* \* \* \* \* . \*

(e) *Liquidation in accordance with final decision.* If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit—

(1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and

(2) entries the liquidation of which was enjoined under subsection (c)(2),

shall be liquidated in accordance with the final court decision in the action. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

Section 735 of the Tariff Act of 1930, as amended (19 U.S.C. § 1673d) provides, in relevant part:

(b) Final determination by Commission.
(1) *In general.* The Commission shall make a final determination of whether—

(A) an industry in the United States—
(i) is materially injured, or
(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded, by reason of imports of the merchandise with respect to which the administering authority has made an affirmative determination under subsection (a)(1).

Section 771 of the Tariff Act of 1930, as amended (19 U.S.C. § 1677) provides, in relevant part:

(7) Material injury.

(A) *In general.* The term "material injury" means harm which is not inconsequential, immaterial, or unimportant.

This case arose out of a self-initiated antidumping investigation by the Department of the Treasury (hereinafter Treasury) as a result of information obtained under the "Trigger Price Mechanism" (hereinafter TPM). Under this procedure prices of certain imported steel mill products were monitored. Sales below the trigger price are regarded as less than fair value sales and are grounds for instituting an antidumping investigation (42 Fed.Reg. 65215 (1977)). On February 20, 1979 Treasury published "Antidumping Proceeding Notice" in the Federal Register, 44 Fed. Reg. 23621. A survey of shipments of Korean steel wire nails from May 1, 1978 to May 28, 1978 resulted in a finding that twenty-two of the thirty-three Korean companies shipping nails to the United States were making sales below the trigger price levels. A formal investigation pursuant to the Antidumping Act of 1921, 19 U.S.C. § 160, et seq. (repealed 1979), was instituted. Treasury found there was substantial doubt that importations of steel wire nails from Korea were causing injury to a domestic industry and referred the matter to the United States International Trade Commission (hereinafter Commission) for preliminary determination of injury under Section 201(c)(2) of the Antidumping Act of 1921.

The Commission on April 20, 1979 instituted a preliminary investigation, No. AA1921–Inq.–26, Certain Steel Wire Nails from the Republic of Korea, for the purpose of determining whether there was a reasonable indication of injury to a domestic industry. 44 Fed.Reg. 24649 (April 26, 1979). A thirty-day preliminary inquiry into the state of the domestic steel wire nail industry was instituted and resulted in a finding by the Commission that particularly in western regional markets a reasonable indication of injury justified proceeding with the investigation.

On May 23, 1979 the Commission published its affirmative determination in the Federal Register, 44 Fed.Reg. 29989 (May 23,

1979) finding there was a reasonable indication that an industry in the United States was being injured or was likely to be injured by reason of the importation of certain steel wire nails from Korea. After the affirmative preliminary finding, Treasury's investigation of possible less than fair value sales continued, and on October 26, 1979 it published a notice in the Federal Register, 44 Fed.Reg. 61722 (October 26, 1979) of "Tentative Determination of No Sales at Less Than Fair Value and Tentative Discontinuance of Antidumping Investigation". The notice stated that, with the exception of Murakami Kogyo Co. Ltd., Treasury had found no reasonable grounds to believe that steel wire nails from Korea were being sold at less than fair value. The finding indicated Murakami's dumping margins were minimal and assurances were received that all future sales would be at fair value. Treasury, therefore, tentatively proposed termination of the antidumping investigation.

On January 1, 1980 the Trade Agreements Act of 1979 (Pub.L. 96–39, 93 Stat. 144, et seq.) became effective (19 U.S.C. § 1673 et seq.). The investigation then being conducted by Treasury under the Antidumping Act was terminated and the Government's inquiry resumed by the Department of Commerce (hereinafter Commerce) since the functions of Treasury were transferred to Commerce by the Government Reorganization Act, Reorganization Plan No. 3. Under the transition provisions of § 102(b)(2) of the Trade Agreements Act, supra, Commerce treated Treasury's previous "Tentative Determination" as a preliminary determination under section 733 of the Tariff Act, 19 U.S.C. § 1673b (Supp. III 1979).

On May 23, 1980 (45 Fed.Reg. 34141) six Korean companies were found to be selling steel wire nails at less than fair value.[1] Of the six companies all but Kuk Dong Metal

Industrial Co. were Japanese owned producers located in Korea's Masan Zone. Eleven other Korean companies were excluded from the investigation since they were not suspected of dumping. Six other companies were found to be selling steel wire nails at fair value or their sales at less than fair value were de minimis. 45 Fed.Reg. 34944–45.

After an investigation (Steel Wire Nails I) made pursuant to Section 735 of the Tariff Act of 1930, 19 U.S.C. 1673d, the United States International Trade Commission determined, based upon the record made before it, that there was no injury to the domestic industry, and dumping duties were therefore not assessed.

On August 13, 1980, plaintiffs filed an appeal in this court. In its complaint, served on October 1, 1980, plaintiffs seek to have the court overturn the commission's determination as unlawful and unsupported by substantial evidence.

Plaintiffs on February 24, 1981 moved for summary judgment. Plaintiffs in addition moved to disqualify counsel for the Korean intervenors based on the violation of Disciplinary Rule (DR 9–101(B)) of the Code of Professional Responsibility as adopted by the American Bar Association. The latter matter was resolved denying plaintiffs' motion in *Ah Ju Steel Co., Ltd., et al. v. Armco, et al.*, 680 F.2d 751 (Cust. & Pat. App.1982).

The Department of Commerce continued to monitor imports of steel wire nails pursuant to the trigger price mechanism program and on July 2, 1981 found that imports of steel wire nails from Korea, Japan and Yugoslavia were being sold at less than the trigger price. The Department of Commerce, therefore, initiated a second antidumping investigation of steel wire nails (Steel Wire Nails II) 46 Fed.Reg. 34615 (July 2, 1981). On February 3, 1982 a pre-

---

**1.** 1. Murakami Kogyo Co. (renamed Ah Ju Steel Co.);
2. Korea Murata Industrial Co. (renamed Han Duk Steel Co., Ltd.);
3. Kankoku Nittei Co., Ltd. (renamed Je Il Steel Co., Ltd.);

4. Kankoku Nitto Ltd.;
5. Korea Nippon Ceisen Co., Ltd.;
6. Kuk Dong Metal Industrial Co.

**56**

liminary affirmative determination by the Commission and Commerce resulted in suspension of liquidation of all steel wire nails from Korea. 47 Fed.Reg. 5029. A final determination of sales at less than fair value was made on June 24, 1982. 47 Fed.Reg. 27393. In August 1982 the Commission found that the less than fair value imports were causing material injury to domestic industries. Accordingly on August 6, 1982 antidumping duties were imposed on Korean steel wire nails entered or withdrawn from warehouse on or after February 3, 1982. 47 Fed.Reg. 35266 (August 13, 1982). The Korean producers under the findings of Steel Wire Nails II did not file an appeal.

■ In this action the court will first consider plaintiffs' motion for a preliminary injunction. The moving party must establish its entitlement to the preliminary relief sought by demonstrating that the well-known factors for determining whether an injunction should be granted are present. Interim injunctive relief is an extraordinary and drastic remedy which should not be routinely granted unless the movant meets the burden of persuasion. Wright & Miller, Federal Practice and Procedure, Civil § 2948 (1973).

■ *S.J. Stile Associates Ltd. v. Dennis Snyder*, 68 CCPA ——, C.A.D. 1261, 646 F.2d 522 (1981) set forth the following factors necessary for determining whether a preliminary injunction should be granted:

1. a threat of immediate irreparable harm;

2. that the public interest would be better served by issuing than by denying the injunction;

3. a likelihood of success on the merits; and

4. that the balance of hardship on the parties favors the moving party.

The injury referred to above must be *irreparable.* An injury though substantial in terms of money is not sufficient unless it is irreparable. *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974).

■ While plaintiffs in this action have alleged irreparable injury, neither affidavits nor supporting authorities were submitted to the court. The allegation "lost sales" as a result of the nonimposition of antidumping duties has not been shown. In fact plaintiffs have failed to establish a nexus between the lost sales and the failure to impose dumping duties. In addition, since the entries involved extend over a three year period, the merchandise has long since entered the trade and commerce of the United States and therefore has no effect on sales of merchandise currently being imported. Importations of Korean nails since "Steel Wire Nails II" require deposits of estimated antidumping duties and liquidation of said entries have been suspended. 47 Fed.Reg. 35266.

Plaintiffs having failed to meet their burden of establishing irreparable injury, the motion for a preliminary injunction is denied. It would serve no useful purpose to consider the other three elements required for a preliminary injunction, set forth in *Stile, supra.*

■ Plaintiffs' motion for remand to the International Trade Administration to determine whether any of the false, fictitious or fraudulent representations in the administrative record affected its determination must also be denied.

The thrust of plaintiffs' motion is the fraud committed by Mitsui (U.S.A.). The record before me establishes that both Mitsui (U.S.A.) and Pacific Steel and Supply Company, a customer of Mitsui (U.S.A.), pled guilty in criminal actions. Pacific Steel admitted filing false statements which did not reflect the true invoice or purchase price, a violation of 18 U.S.C. § 542. Mitsui (U.S.A.) admitted to filing false customs documents, the Special Summary Steel Invoices, in violation of 18 U.S.C. § 371. The latter invoices were utilized by customs to determine whether sales were being made below the "trigger price". However, the information utilized to determine less than fair value margins did not involve the price from Mitsui (U.S.A.) to its customers in the United States. The pur-

chase price was calculated on the basis of the price *to* an unrelated trading company or *to* an unrelated purchaser in the United States. 45 Fed.Reg. 3942. The determination by the ITA involved the price *from* the nail manufacturing companies *to* the trading companies. This was the price that was compared to foreign market value which would not be affected by any subsequent fraud on the part of a trading company in dealings with its customers in the United States.

In addition, the ITA's determination makes it clear that the foreign market value is not related to the Japanese trading company's deception since six Korean companies *supra* were found to be selling at less than fair value. The home market price was utilized for the foreign market value in the case of Kuk Dong. The merchandise of the five other companies, subsidiaries of Japanese nail manufacturers, was appraised at foreign market value as per Section 773(d), Tariff Act of 1930 as amended by the Trade Agreements Act of 1979, 19 U.S.C. 1677b(d).

Since it was the price of the Korean nail manufacturing companies to the trading companies that established less than fair value margin, that margin could not have been affected by the subsequent price from the Japanese trading companies to its customers. Therefore, plaintiffs' motion for remand is denied.

■ Plaintiffs' motion to set aside the liquidations made since December 14, 1982, covering merchandise entered between May 23, 1980 and February 2, 1982 is denied. Congress in enacting Section 1516a defined, delineated, and restricted the remedies available to the parties in antidumping and countervailing duty actions. Of particular interest in the instant action are the provisions of 1516a(c)(1) and (2). The former controls the liquidation of entries in accordance with the determination of the adminis-

tering authority. This is so, unless an injunction is granted under the provisions of 1516a(c)(2), and if the merchandise is entered or withdrawn from warehouse for consumption on or before the date of publication in the Federal Register. Plaintiffs, in the present action did not seek an injunction until March 21, 1983.

As indicated *supra* following the investigation in "Steel Wire Nails I", Commerce continued to monitor imports of steel wire nails, and found that such merchandise was being sold at less than the trigger price. Thereafter, a second antidumping investigation was instituted, a preliminary affirmative determination was made, and liquidation of entries of Korean nails were suspended. A final determination of sales at less than fair value covering all but two Korean producers[2] was made on June 24, 1982.

In view of the foregoing the entries made prior to notice of publication of suspension of liquidation of Korean wire nails under "Steel Wire Nails II", were properly the subject of liquidation under the provisions of 1516a(c)(1) since plaintiffs failed to obtain an injunction as provided for under 1516a(c)(2). Plaintiffs' motion to set aside the liquidations made since December 14, 1982, covering merchandise entered between May 23, 1980 and February 2, 1982 must be denied.

In view of the holdings made the court is of the opinion this action must be dismissed on the grounds that the action is not one in which relief may be granted. This action is, therefore, dismissed.

---

**2.** Samchok and Jin Heung.