Robert W. KEARNS, Appellee,

v.

**FRED LAVERY PORSCHE AUDI COMPANY, et al., Appellants.**

Appeal No. 84–655.

United States Court of Appeals, Federal Circuit.

Oct. 11, 1984.

Certiorari Denied Jan. 21, 1985. See 105 S.Ct. 967.

David S. Klontz, Washington, D.C., argued for appellants; James H. Marsh, Washington, D.C., on the brief.

Keith V. Rockey, Chicago, Ill., argued for appellee; Thomas C. Elliott, Jr., Chicago, Ill., Dale R. Small, Detroit, Mich., of counsel.

Before RICH, DAVIS and BALDWIN, Circuit Judges.

DAVIS, Circuit Judge.

The only issue is whether the attorney for appellants (defendants below) was properly disqualified by the District Court in this patent infringement suit. This is one of those cases in which the result turns on the assessment of the individual facts. We believe that on the record before it the District Court's factual findings were not clearly erroneous. On those findings it necessarily follows that the decision of the District Court that the attorney must be disqualified was not an abuse of discretion. We therefore affirm.[1]

I

In March 1982 appellee Robert Kearns brought this patent infringement suit in the United States District for the Eastern District of Michigan against Audi NSU Auto Union, A.G. and Volkswagenwerk, A.G. (manufacturers respectively of Audi and Volkswagen automobiles), Fred Lavery

---

**1.** There is no question that this court has jurisdiction of this appeal. *See Panduit Corp. v. All States Plastic Mfg. Co., Inc.,* 744 F.2d 1564 at pp. 1571–1572 (1984); *Ah Ju Steel Co., Ltd. v. Armco, Inc.,* 680 F.2d 751, 752–53 (CCPA 1982).

Porsche Audi Co. and Wood Motors Inc. (Michigan sellers respectively of Audi and Volkswagen autos) on five United States patents directed to automobile intermittent windshield wiper systems. In August 1983 Kearns moved to disqualify Audi's attorney, Peter N. Lalos, and his law firm from representing Audi in this litigation. The ground asserted was that Kearns had earlier consulted Lalos for the purpose of obtaining Lalos' representation of Kearns in related patent infringement suits previously brought (in 1978) by Kearns on the same patents against Ford Motor Co. and Wood Motors (as a Ford dealer). On that motion, the District Court received affidavits and heard the oral testimony of Messrs. Kearns and Lalos. The court granted the motion, made findings and issued an opinion, and then entered an order disqualifying Lalos and his firm. This appeal is taken from that order.

The District Court found that Kearns, the inventor and owner of the patents, had previously sued other automobile manufacturers for infringement of those patents, including Ford. Kearns' then attorney in that case was forced to withdraw in December 1980, and Kearns had to obtain other counsel. In March 1981 he approached Lalos to ascertain whether he would represent Kearns in the litigation against Ford. At their first meeting, on March 13, Kearns told Lalos that Audi was a potential defendant in another patent suit which could be brought on the same patents (a notice of infringement had already been sent to Audi), and Lalos advised Kearns that he had, and did, represent Audi on patent matters, although he had not yet been retained to represent Audi on the matter now before us. Up to that point, both sides are agreed.

After that point, the testimony of Kearns and Lalos, which was taken before the court, diverged drastically. On the basis of the oral testimony, the various affidavits filed, and documentary evidence, the court found the following as the facts: Lalos said to Kearns that he might be able to represent him in the pending litigation against Ford if there could be a satisfactory settlement of the potential Audi case. "Kearns believed that Lalos seriously considered representing him, and ... for the period of approximately March 13 [the date of the first meeting] until April 8, 1981, Kearns and Lalos discussed Lalos' representation of Kearns. In these discussions, they went into the facts of the case, both public and confidential, in great detail". Some time after the initial conference on March 13 (and before April 8th), Kearns delivered to Lalos all the documents in the Ford case that he had obtained from his prior lawyer. These documents contained, among other things, "handwritten notes of [the prior lawyer], and confidential and public records". Lalos then called the prior attorney and talked about the case. Lalos testified that he talked only about public matters, but the prior attorney's affidavit stated: "I believe I discussed various issues, and Kearns' position in respect to those issues, in some depth with Mr. Lalos because of Mr. Kearns' interest in securing Mr. Lalos' representation". The court specifically found that "matters related to the Ford litigation, other than those of public records, were discussed between Lalos and [the prior attorney]".

Kearns' son said in an affidavit quoted by the District Court: "I accompanied my father on four of his visits to Mr. Lalos. I heard Mr. Lalos tell my father that he would consider representing my father in that litigation. As a result, my father conducted, in my presence, detailed discussions with Mr. Lalos regarding the merits of the litigation".

Kearns asked Lalos to undertake the representation on a contingency basis, and Lalos said that would have to be taken up with his partners. That was done and the partners "turned down a contingency arrangement". The court found that these facts were borne out by two contemporaneous handwritten documents by Kearns (quoted by the court) dated April 8 and April 13.

The court then found (1) that the representation negotiations broke down (in the second week of April 1981) after Lalos decided he would not take the case on a contingency basis, and (2) that the parties at that time started to negotiate a settlement of the Audi matter (although suit against Audi had not yet been begun, a notice of infringement had been sent); these negotiations ultimately broke down (but were resumed after suit was brought in March 1982).

The District Court concluded that "there is no question that between March 13 and April 8, 1981, a lawyer-client relationship existed between Lalos and Kearns" in the sense that that relationship attaches when one consults a lawyer with a view to obtaining professional legal services, and therefore that "a fiduciary relationship existed". The court decided that Lalos was disqualified from further representation of appellee-defendant. "because he received confidential information concerning a case [the Ford case] which is substantially related to the instant case". Lalos' firm was also disqualified.

probability that confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed". *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980). Such a "substantial relationship" requires the attorney's disqualification. *General Electric Co. v. Valeron & Co.*, 608 F.2d 265, 267 (6th Cir.1979); *Melamed v. ITT Continental Baking Co.*, 592 F.2d 290, 292 (6th Cir.1979); *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 224 (5th Cir.1978); *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 709-10 (7th Cir.1979). And if there is both such a fiduciary lawyer-client relationship [on the part of the challenged lawyer himself] and a substantial relationship between the cases, "it is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification". *Trone v. Smith, supra*, 621 F.2d at 999. The cases also show that this disqualification rule *prima facie* extends to disqualification of the lawyer's firm as well. *See also* Rule DR 5-105(D) of the American Bar Association Code of Professional Responsibility.[3]

## II

There is no significant dispute between the parties, and the court agrees, as to the controlling legal principles.[2] First, the "fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result". *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.1978). To the same effect, *see McCormick on Evidence*, 2d Ed.1972), § 88, p. 179. If such a temporary fiduciary lawyer-client relationship exists, the rule on disqualification is: "If there is a reasonable

## III

The controversy in this case is not over these legal rules but over the factual question of whether there ever was, even preliminarily, such a fiduciary relationship between Kearns and Lalos. Appellants' position is that there was not, and could not reasonably have been, any such lawyer-client fiduciary relationship because Kearns knew almost from the first moment that Lalos represented Audi which company Kearns had already accused of infringing his patents, and Kearns could not have believed that Lalos would even consider representing Kearns. Appellants argue that Kearns is an educated, experienced

**2.** All the extant court decisions (including those in the 6th Circuit) reflect these principles.

**3.** This Code of Professional Responsibility has been adopted for lawyers practicing in the Unit-

ed States District Court for the Eastern District of Michigan.

and sophisticated inventor, with extensive business knowledge and much contact with lawyers and legal matters. When he was immediately informed (at his first interview with Lalos) that the attorney represented Audi in patent matters, Kearns must have known—it is said—that any relationship between him and Lalos could be nothing but purely adversarial, and thus there could not have been any thought on Lalos' part of undertaking to represent Kearns in a patent matter (*i.e.* the Ford case) that was so intimately connected with the threatened patent litigation against his existing client, Audi. Moreover, we are told that Kearns, being the knowledgeable type of person he was, could not have believed that Lalos would need to clear with Audi Lalos' representation of Kearns against Ford—or that such permission was needed or that it was ever sought or obtained (there is no direct evidence that Audi ever gave such permission or was asked to give it). Instead, appellants say that *all* the relationships and negotiations between Kearns and Lalos solely involved the normal adversarial relationship having to do with the possible settlement of Kearns' potential case against Audi—all the conferences and negotiations from March 13th onward are said to have dealt only with that possibility.

There was oral testimony from Lalos denying any thought or consideration of representing Kearns at that time, and tending to support (with some documentation) the claim that only settlement negotiations were undertaken. The difficulty, however, is that the district judge expressly found otherwise, and we cannot say on this record that his contrary findings were clearly erroneous. (That is, of course, the standard, and we cannot decide the facts *de novo.*) There is, first of all, the detailed oral testimony of Kearns, testimony heard and evaluated, and credited, by the District Court. Kearns said, for instance, that,

when Lalos first said that he represented Audi, Kearns was ready to leave but did not because Lalos continued that he was sure he could get Audi's permission (but couldn't get it immediately because of the six hours difference in time between Germany and the United States). Kearns said: "I went along with that. I believed that. I mean, then we began to discuss in more detail". There were further indications of the joint consideration of Lalos' representing Kearns. Kearns testified that they discussed what Kearns had paid his prior lawyer and what he would pay Lalos; Kearns asked that Lalos take the case on contingency and Lalos indicated he would consider doing that. There is the explicit affidavit of Kearns' son quoted *supra* in Part I. There were Kearns' handwritten notes about the Lalos' firms refusal to take the case on contingency; these included notations such as "Partners said the case was 'not a sure thing' because of 'on sale' & 'fraud' allegations".[4] There is no doubt, too, that a large volume of Kearns' documents were made available to Lalos, and that Lalos talked to Kearns' former attorney whose affidavit states: "I believe I discussed various issues, and Kearns' position in respect to those issues, *in some depth* with Mr. Lalos because of Mr. Kearns' interest in securing Mr. Lalos' representation" (emphasis added). At the hearing before the District Court, Lalos admitted that he discussed somewhat with the prior attorney the allegations that the Kearns patent was invalid or unenforceable because of an "on sale" bar or of fraud on the Patent and Trademark Office. Lalos also testified that he told Kearns: "Well, I'd like to see something more. I'd like to see some of the pleadings in the case, and also, perhaps I'd like to talk to [the prior attorney] to get an overview of what this case is all about". There are also Kearns' notes indicating that Lalos and his firm

---

4. The record before us contains reproductions of Kearns' handwritten notes and his typed "Memo to Negotiation File" (April 13, 1981). These support the District Court's findings that

Kearns attempted to have Lalos represent him and that Lalos and his firm looked into the matter but declined to take the case on contingency.

considered taking the case on contingency, and then decided not to. *See* note 4, *supra.*

All this, and more, add up to adequate support for the trial judge's findings. We cannot say that they were clearly erroneous, *i.e.*, that the District Court had to disbelieve Kearns and had to conclude that Kearns understood, all along, that Lalos was an adversary attorney who could not possibly undertake to represent Kearns against Ford because Lalos represented Audi. If Kearns were as knowledgeable and sophisticated in these matters as appellants assert, there is grave doubt that he would have handed over the documentation he did, would have permitted (and apparently encouraged) his previous lawyer to talk to Lalos as much as that lawyer did, would have himself gone into (with Lalos) the merits of his patent cases and possible defenses against an infringement claim— unless he wanted Lalos to represent him. Appellants insist nevertheless that a fully knowledgeable Kearns made "a deliberate, intelligent decision to continue to talk to Lalos", but they give no reason why even a fully knowledgeable inventor would do the things Kearns did in this instance, if he believed that Lalos continued to represent the potential adversary Audi and would not consider representing Kearns. Even in an effort to settle a not-yet-pending case, it is very doubtful that any inventor would have gone so far in revealing his innermost position as the District Court found Kearns to have done.

■ In a word, it is too much to ask us on this record to overturn as clearly erroneous the District Court's specific factual findings that Kearns wanted Lalos to represent him against Ford and believed that Audi would be no barrier (because there would be permission by, or a settlement with, Audi).[5]

## IV

■ Finally, appellants seem to suggest that the disqualification motion was made too tardily. This action was begun in March 1982 but the disqualification motion was not formally made until August 1983 (apparently the issue was raised informally in May 1983). The District Court did not view this lapse of time as an obstacle because (a) "counsel for plaintiff [Kearns] did correspond with defense counsel [Lalos] seeking an explanation of the confidential information Lalos may have obtained",[6] and (b) negotiations looking to settlement of this actual litigation began (in November 1982) and continued for several months, and "the disqualification motion was brought relatively promptly after settlement negotiations broke down". These conclusions are reasonable and obviously do not constitute an abuse of the District Court's discretion.[7]

■ For these reasons the District Court's disqualification of Lalos and his firm must be upheld.

AFFIRMED.

5. Appellants cite *Allegaert v. Perot,* 565 F.2d 246 (2d Cir.1977), for the proposition that, for disqualification to follow, the attorney must be in a position where he could have received information which his would-be client might reasonably have assumed the attorney would withhold from his present client; that could not be true here, it is argued, because Kearns knew that Lalos represented Audi. Three factors plainly distinguish that case: (1) the facts are drastically different and the *Allegaert* opinion described those facts as "peculiar"; (2) the Second Circuit *affirmed* a District Court holding of non-disqualification while here we are asked to *reverse* a District Court holding; and (3) the Second Cir-

cuit stressed the great reliance to be placed on the trial court's exercise of its discretion in disqualification matters.

6. No such explanation was ever obtained.

7. The District Court (in its opinion of October 1983) said that "Disqualification of counsel in this case does not unduly prejudice defendant [Audi], as defendant has ample time and resources to retain new counsel and prepare for trial, which is scheduled [at that time] for late spring of 1984. Additional time can be granted for good cause shown".