991 F.2d 810
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MINNESOTA CHIPPEWA TRIBE and Red Lake Band, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 91-5008.
 United States Court of Appeals, Federal Circuit.
 March 12, 1993.
 
 Before NIES, Chief Judge, and ARCHER and MICHEL, Circuit Judges.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 The Minnesota Chippewa Tribe (Tribe) and the Red Lake Band (Band) appeal the order of the United States Claims Court,[1] Minnesota Chippewa Tribe v. United States, 21 Cl.Ct. 327 (1990), granting the United States' motion to realign the Tribe as a defendant with respect to the Band's Exception 41 claim against the United States. Because of a potential conflict of interest from the same counsel's continued representation of both the Tribe and the Band, the court further ordered that "new counsel will be obtained for at least one of the plaintiffs, at least to Exception 41." 21 Cl.Ct. at 336. We reverse-in-part, vacate-in-part and remand.
 
 DISCUSSION
 
 2
 A. The pertinent facts are that in 1948 the Tribe brought suit in the Claims Court (Docket No. 19) pursuant to the Nelson Act contending that the government failed to obtain fair market value for property that had been ceded to the government. The Tribe seeks to recover its population share, 84.3 percent, of the fair market value of the ceded lands and timber, less allowable offsets.
 
 
 3
 In 1951 the Band filed a separate suit in the Claims Court against the government (Docket No. 189-A). One of its claims, referred to as Exception 41, is based on the fair and honorable dealings clause in Section 2 of the Indian Claims Commission Act of August 13, 1946, c. 949, 60 Stat. 1049, codified at 25 U.S.C. § 70(a)(5) (1988). The Band alleges that it contributed 79.2 percent of the land ceded to the government by the Band and the Tribe, but that it improperly received only its population share, 15.7 percent, of the sales proceeds from the United States. The Band also contends that fair market value for the land ceded was not obtained by the government.
 
 
 4
 These cases have been consolidated and both the Tribe and the Band have been represented by the same counsel since the inception of their claims. In 1989 the government moved to realign the Tribe to make the Tribe a defendant with respect to the Band's Exception 41 claim. This motion was grounded on the government's contention, in its response to the Exception 41 claim, that "if it has paid any funds belonging to the Red Lake Band to [the Tribe], the United States is entitled to recoup from [the Tribe] such overpayments." Minnesota Chippewa, 21 Cl.Ct. at 329.
 
 
 5
 The Claims Court initially denied the government's motion, without prejudice, suggesting that because the Band's claim would not be tried for several years, consideration of the matter could be postponed. The Tribe and the Band, wishing to resolve the issue of realignment, requested that the trial judge rule on the issue. The Claims Court then granted the government's motion and realigned the Tribe as a defendant with respect to the Band's Exception 41 claim and ordered new counsel. The order was certified for interlocutory appellate review to this court pursuant to 28 U.S.C. § 1292(d)(2). This court granted review by a nonprecedential order dated October 15, 1990.
 
 
 6
 B. On appeal the government has modified its position that it can recoup from the Tribe any additional amount it might have to pay the Band under the Exception 41 claim. The government now states:
 
 
 7
 To the extent that the claim for "recoupment" has been understood to mean an intention on the part of the United States to seek to recover such monies [due the Band] from payments previously made to the Tribe prior to the institution of this lawsuit, that understanding is erroneous.
 
 
 8
 Appellee's brief at p. 9, n. 4. The government also states that the Tribe, as the realigned defendant, will not be affected by the outcome of the Exception 41 proceeding:
 
 
 9
 In filing the motion to realign the Tribe as a defendant for adjudication of Exception 41, the United States did not intend to subject the Tribe to all the liabilities normally inherent in being a defendant to a lawsuit. Thus, as a defendant to Exception 41, the United States does not believe that the Tribe can be held liable for a money judgment in favor of the Band. Nor does the United States believe that the realignment of the Tribe as a defendant constitutes a waiver of the Tribe's sovereign immunity, thereby subjecting it to a judgment against the Tribe in favor of the Band. The realignment simply reflects the reality of the potentially adverse positions of the Band and the Tribe which naturally flow from the Band's claim in Exception 41.
 
 
 10
 Appellee's brief at pp. 8-9. With these concessions the government now asserts that "[a]s a procedural method of defining the respective roles of the two [I]ndian claimants, the court realigned the Tribe as a defendant as to Exception 41."
 
 
 11
 Without the Tribe having any real interest or potential liability as a defendant, we do not view procedural convenience, if any, as a sufficient ground upon which to base realignment. Moreover, the Band has made no claim against the Tribe. As the government admits, "the Tribe [cannot] be held liable for a money judgment in favor of the Band." Because the Tribe can incur no liability in connection with the Band's Exception 41 claim, we conclude that the Tribe was improperly realigned as a defendant in that claim.
 
 
 12
 C. A decision that realignment was improper does not resolve the issue whether the Claims Court abused its discretion, see Kearns v. Fred Lavery Porsche Audi Co., 745 F.2d 600, 601 (Fed.Cir.1984), in ruling that the Tribe or the Band must obtain new counsel because of a potential conflict of interest. We agree that a conflict would exist if there were a recovery based on increased fair market value for the lands and timber ceded by the Tribe and the Band. At that point it would be necessary to determine whether the Band is entitled to recover based on the land it ceded, rather than on the basis of population share, whether under the separate claims of the Tribe and the Band more than 100 percent of fair market value for the ceded land and timber can be recovered, and whether the government is entitled to any offset against recovery by the Tribe. As the Claims Court stated:
 
 
 13
 The court is unwilling, at this stage in the litigation, to foreclose the possibility that it would take account, in the Nelson Act claims, of the facts established by Red Lake in its fair and honorable dealings claim.
 
 
 14
 It is easy to foresee that the court would not treat reformation of the treaty in docket 189-A in isolation. The court could conclude, particularly if there were a recovery on the land and timber valuation claims, that a comprehensive adjustment should be made that takes account of Red Lake and the Minnesota Chippewa Bands simultaneously.
 
 
 15
 21 Cl.Ct. at 332-333 (footnote omitted).
 
 
 16
 Even though there is potential for conflict, we nevertheless conclude that it was premature to disqualify counsel. Neither the Claims Court nor the parties have indicated that the areas of potential conflict must be resolved prior to trial of the fair market value issue. If recovery on the fair market value issue is not obtained, all of the other issues will be mooted except for the Band's claim to an allocation based on land ceded instead of population share. The Tribe would not then have an interest in that issue because, as the government has now conceded, it cannot maintain a recoupment claim against the Tribe.
 
 
 17
 Courts should be reluctant to disqualify counsel. The Second Circuit has noted:
 
 
 18
 This reluctance probably derives from the fact that disqualification has an immediate adverse effect on the client by separating him from his counsel of choice, and that disqualification motions are often interposed for tactical reasons.[2]
 
 
 19
 Board of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir.1979) (citations omitted). Here, the disqualification of counsel would have a severe impact. As the Claims Court acknowledged:
 
 
 20
 This case and a handful like it are unique. These entities have been represented by the same counsel for 39 years. Exception 41 has been of record since 1970. The litigation has proceeded with no assertion of a conflict [of interest] based on [Exception 41] until 1989. Present counsel for plaintiffs not only has invested an enormous amount of effort in these claims, he and his office are in possession of huge volumes of materials necessary to litigating the claims.
 
 
 21
 21 Cl.Ct. at 336. Because of the obvious hardship that disqualification of counsel would cause in this case, it should be ordered only as a last resort. After trial on the merits of the fair market value issue, it may be necessary for the Claims Court to reconsider disqualification if the issues that give rise to conflicts must be decided.
 
 
 22
 D. We reverse that part of the Claims Court's order realigning the Tribe as a defendant with respect to the Band's Exception 41 claim and vacate that part of its order disqualifying counsel. The case is remanded for further proceedings.
 
 COSTS
 
 23
 Each party to bear its own costs.
 
 
 24
 NIES, Chief Judge, concurring-in-part/dissenting-in-part.
 
 
 25
 I would reverse the trial court's ruling respecting realignment of the Tribe as a defendant respecting the Exception 41 claim of the Red Lake Band and affirm the court's requirement that the plaintiffs obtain separate counsel or consent to mutual representation.
 
 
 26
 Respecting the conflicting interests of the parties, the trial court enumerated others besides the technical realignment on the Exception 41 claim. Minnesota Chippewa Tribe v. United States, 21 Cl.Ct. 327, 330 (1990). Indeed, it is not clear that the parties would march in tandem if only the Nelson Act were asserted by both as the sole basis for distribution. The Tribe and the Red Lake Band assertions of breach of trust are not a single claim but two distinct claims. Each would have a separate judgment. The Tribe's claim, however, is dependent in part on proof that Red Lake Band's land was sold at less than fair value and that the Tribe has not received all it is entitled to because of mismanagement of that land by the government. But the amount the Tribe received in the past could well influence, according to the trial court, the fair amount the Tribe should receive on this claim if sustained (wholly apart from a government claim of setoff). Indeed, the more persuasive are Red Lake Band's arguments, the less the Tribe may receive.* Therefore, I agree with the trial court that conflict is not avoided by holding the Exception 41 claim for trial until after the breach of trust claims. All of the evidence on these matters should be received in connection with the breach claims in order for that court to reach a fair evaluation of respective damages on those claims.
 
 
 27
 With respect to the realignment of the Tribe as a defendant opposing Red Lake Band's Exception 41 claim, the only apparent effect from this realignment is to mandate that counsel be replaced. At least no other is identified. Without realignment, the plaintiffs can mutually agree to keep the same counsel and continue on. I believe it is too high a price to pay for "procedural convenience" that a party must change counsel. Indeed, the parties may be able to present and try their claims to their satisfaction without any conflict between them. If not, they can change of their own volition in the future. I do not see this is a matter that should concern the government or the courts further.
 
 
 28
 The plaintiffs ask us to rule that they can recover on all claims without the possibility of a government setoff. Resolution of that issue would not necessarily resolve the conflict problem and I agree that it need not be resolved at this time.
 
 
 
 [1]
 The United States Claims Court was renamed the United States Court of Federal Claims on October 29, 1992. Federal Courts Administration Act of 1992, Pub.L. No. 102-527, § 902(a), 106 Stat. 4506 (1992)
 
 
 [2]
 As pointed out by Appellants, the issue of the government's right to recoup against amounts previously paid the Tribe was "the pivotal and controlling" factor in the government's motion and the Claims Court's decisions that the Tribe must be realigned as a defendant and that counsel must be disqualified. The government's volte face on appeal in conceding it has no right to recoupment and in failing to argue the realignment issue may well indicate that disqualification was belatedly sought for tactical reasons
 
 
 *
 It would also appear that there is a present conflict respecting which party's land had greater value. For example, a small parcel of land of the Tribe could equal in value a great quantity of Red Lake Band land. Land is usually not fungible